# EXHIBIT A – PART 3

# Civil Retrial Application

Applicant (defendant of original trial): Beijing Qilong Pharmaceutical Holding Co., Ltd., with the address of 1001-14, 10th Floor, Building 9, Block 2 A, Building 9, Financial Street, Xicheng District, Beijing.

Legal representative: Zhang Junqi, executive director and manager.

Respondent (plaintiff in the original trial): Shenzhen Qianhai Nations Investment Management Co., Ltd., with the address of Room 201, Building A, No. 1, First Qianwan Road, Qianhai Shenzhen-Hong Kong Cooperation Zone, Shenzhen, Guangdong.

Legal representative: Sun Yingtong.

Third Party of original trial: Shenzhen Guotai Qixing Industrial Investment Fund Management Center (limited partnership), with the address of Room 201, Building A, No. 1, First Qianwan Road, Qianhai Shenzhen-Hong Kong Cooperation Zone, Shenzhen, Guangdong.

Executive Partner: Beijing Qilong Pharmaceutical Holding Co., Ltd.

**Reasons for retrial application:**

Errors in the (2018) Yue 0391 MinChu No. 255 Civil Judgment:

1. Some new evidence is sufficient to overturn the original judgment, which is in line with Item (1) of Article 207 of the Civil Procedure Law;

2. The basic facts recognized in the judgment are not proved by evidence, which is in accordance with Item (2) of Article 207 of the Civil Procedure Law;

3. The main evidence for the determination of facts in the original judgment or order has not been cross-examined, which is in line with Item (4) of Article 207 of the Civil Procedure Law;

4. A mistake exists in the application of the law in the judgment, which is in line with Item (6) of Article 207 of the Civil Procedure Law;

5. The applicant (defendant in the original trial) fails to participate in the proceedings due to reasons not attributable to himself or his agent ad litem, which is in line with Item (8) of Article 207 of the Civil Procedure Law;

For this, the applicant files a retrial application.

**Retrial request:**

1. Request the court to revoke (2018) Yue 0391 MinChu No. 255 Civil Judgment according to law;

2. Request the court to retrial the case according to law;

3. The costs of litigation in the original trial shall be borne by the respondent.

**Facts and Reasons:**

**I. Facts of the case and origin of the dispute**

On April 1st, 2014, Shenzhen Qianhai Khan Funds Management Co., Ltd. (hereinafter referred to as "Shenzhen Khan") was registered and established in Shenzhen Qianhai. Its business scope includes entrusted management of equity investment funds, entrusted asset management, investment management, equity investment, etc. From August 2014 to September 2015, Nations Technologies Co., Ltd. (hereinafter referred to as "Nations Technologies") and Luo Zhaoxue, its chairman, successively subscribed for hundreds of millions of yuan of fund of Shenzhen Khan, making a profit



of tens of millions of yuan.

On August 7, 2015, Shenzhen Khan established a wholly owned Beijing Qilong Pharmaceutical Holding Co., Ltd. (hereinafter referred to as "Beijing Khan"), and set up an American merger team to prepare for overseas pharmaceutical mergers. Luo Zhaoxue, (changed to Sun Yingtong on May 28, 2018), the then chairman of Nations Technologies, expressed his intention to participate in the investment and also promised to invest a total of 2 billion yuan. Then, on November 23, 2015, Shenzhen Qianhai Nations Investment Management Co., Ltd. (hereinafter referred to as "Nations Investment"), a wholly-owned subsidiary of Nations Technologies, and Beijing Khan signed the "Partnership Agreement on the Shenzhen Guotai Qixing Industrial Investment Fund Management Center (Limited Partnership)", and jointly established the Shenzhen Guotai Qixing Industrial Investment Fund Management Center (limited partnership) (hereinafter referred to as "Shenzhen Guotai") for a term of 20 years. Nations Investment Co., Ltd., as a limited partner, and Beijing Khan, as a general partner, signed the Supplementary Agreement on November 27, 2015, and agreed to guarantee the fixed income of Nations Investment Co., Ltd. at 5% per year.

After the signing of the above mentioned Agreement, both parties shall perform their respective obligations of investment payment, and Shenzhen Guotai shall form a merger team to carry out investment activities in accordance with the Agreement.

The dispute in this case was caused by the improper interference of Nations Investment in the execution of partnership affairs during the partnership period, and the unilateral request to stop the original pharmaceutical merger business and carry out the cross-industry merger and merger of the chip industry (namely the merger of Micron Technology, Inc., hereinafter referred to as "Micron Technology"). In addition, the pharmaceutical industry and the chip industry belong to different industries, while the merger team is especially set up for the pharmaceutical merger. Moreover, Micron technology is among one of the giants in the American chip industry, the investment of 2 billion yuan promised by Luo Zhaoxue was not enough to carry out the merger. Then Beijing Khan, as the executive partner, explicitly rejected this, and the two parties immediately had disputes and evolved into criminal charges, civil lawsuits (including the dispute of the original trial of the case) and other disputes.

## II. Key facts of the case

1. Beijing Khan has fulfilled its obligation of capital contribution as a partner. As the plaintiff of the original trial and the only party involved in the case, Nations Investment made false statements and maliciously concealed the facts, thereby leading to the misdetermination of facts by the court in the original trial.

After the establishment of the Shenzhen Guotai, Nations Investment, as a limited partner, paid RMB 300 million in full on November 30, 2015; and Beijing Khan, as a general partner, paid 500,000 yuan on December 16, 2016. This fact should be known by the partnership companies and all partners. However, Nations Investment claims in the complaint that "since the establishment of the third party, the defendant has not contributed in accordance with the agreement", which was a false statement and misled the court and violated Article 13 of the Civil Procedure Law of the People's Republic of China that civil litigation should follow the principle of honesty".

In the original trial of this case, the defendant Beijing Khan and the third party Shenzhen Guotai were trailed in absentia. The plaintiff Nations Investment was the company that actually participates in the lawsuit, which has the legal obligation of good faith lawsuit, but it made false statements and



made statements completely inconsistent with the facts about the key fact of the partner investment, which misled the court. It can be seen that Nations Investment lacks integrity in the lawsuit, and its litigation claims also lack objectivity.

2. The Nations Investmen and its controller Luo Zhaoxue were clearly aware of the investment income and expenditure, capital destination and financial situation of the partnership. As the executive partner, Beijing Khan conducted investment activities without any improper conduct.

(1) About the 226.611 million yuan investment of Guotaiqixing Biomedical International(Singapore) PTE. Ltd.

On December 8, 2015, Nations Investment and Beijing Khan jointly decided to invest 35 million dollars (RMB 220 million according to the exchange rate at that time) in Guotaiqixing Biomedical International (Singapore) PTE. Ltd., (hereinafter referred to as "Singapore Company"), and on December 22, 2015, transferred RMB 226611,000 to the Singapore Company. Dai Xuefeng and Luo Zhaoxue are directors of the Singapore Company, and Luo Zhaoxue opened a bank account with DBS Bank in Singapore in person and the investment payment shall be completed under the bank staff's signature and seal.

(2) The third-party consultant fee is about 1 million dollars.

From January to September 2016, the merger team successively signed consulting agreements with China Merchants Bank New York Branch, Deloitte Touche Tohmatsu and Baker & McKenzie, and paid consulting fees of about 1 million dollars.

(3) On December 12, 2016, Shenzhen Guotai paid a dividend of 50 million yuan to Nations Investment at the request of Nations Technologiesand Luo Zhaoxue.

(4) The third party conducted an accounting audit on the financial situation of the partnership company Shenzhen Guotai, which was aware of by Nations Investment with no objection. On March 3, 2017, at the request of Nations Technologies, Shenzhen Guotai conducted capital verification and Ruihua Certified Public Accountants issued a capital verification report, which clearly indicated the whereabouts of all the money of Shenzhen Guotai. After receiving the report, Nations Technologies and Luo Zhaoxue raised no objection.

3. Since Nations Investment and Luo Zhaoxue interfered with the execution of partnership affairs of Beijing Khan, the two parties had a disagreement and the cooperative investment was suspended. Then, Luo Zhaoxue demanded 300 million yuan of funds through personal threats and false accusations and other methods. Considering the safety of families, employees and themselves, Shenzhen Khan and its investors liquidated more than a dozen funds and more than one billion yuan of funds remaining from October to November 2017, and withdrew the lease of the business premises, which was not identified by the original trial verdict as "personnel whereabouts unknown and lost contact that led to a highly uncertain and dangerous state of the interests of the partnership companies, the plaintiff and the creditor."

(1) Luo Zhaoxue of Nations Investment has known Dai Xuefeng, the investor of Shenzhen Khan, for many years, and is well aware of the contacts of Shenzhen Khan and Beijing Khan as well as the office and business places in China and abroad. Thus, there is objectively no situation of "losing contact". In September 2017, Luo Zhaoxue met with Dai Xuefeng again in the American office. Luo claimed himself to be a spy, reiterated that Nations Technologies was not interested in pharmaceutical mergers, threatened the safety of his family in China, required Dai Xuefeng to personally remit 300 million yuan to the account ▮▮▮▮0031 of Reach Perfect in New York, which



FILED: NEW YORK COUNTY CLERK 03/12/2024 10:18 AM
INDEX NO. 152210/2024

NYSCEF DOC. NO. 12

Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 5 of 90

RECEIVED NYSCEF: 03/12/2024

133

was under his personal control, in order to achieve the purpose of embezzlement.

(2) To protect the safety of family members, employees and themselves, from October to November 2017, Shenzhen Khan contacted customers about liquidation and liquidated more than a dozen remaining funds and over one billion funds. To ensure that the rights and interests of customers and employees do not suffer any loss, the company took the initiative to compensate part of the funds to customers, made economic compensation to the resigned employees and withdrew the lease of the business places.

(3) As mentioned earlier, Nations Investment Luo Zhaoxue violated the cooperation agreement in the partnership affairs, personally went to the Singapore DBS bank to open a bank account and completed the payment of a 35 million dollars investment fund, and served as a director of the Singapore Company. The equity rights and interests of the partnership have been directly involved in and managed by Luo Zhaoxue as a director, and the interests of the partnership companies and Nations Investment are not in a "highly uncertain and dangerous state".

Then, since Luo Zhaoxue of Nations Investment violated the investment agreement and stopped medicine mergers but started the chip industry mergers, the two parties have serious disputes on merger direction. At the end of 2016, the merger business of the partnership company investment was forced to suspend, then the merger business of the partnership company investment was suspended because of the improper intervention of Luo Zhaoxue of Nations Investment in the partnership affairs, and the interests of the partnership enterprise did not stay in a "highly uncertain and dangerous state". In addition, the dispute was objectively and officially registered by the American government on October 30, 2017, and Dai Xuefeng and relevant staff of Khan had to cooperate with the investigation, and thus the suspension of the partnership's investment and merger business was also a helpless move. Obviously, the above facts were wrongly certified in the first trial.

III. The applicant believes that:

1. This case has new evidence that was enough to overthrow the original judgment, the basic facts in the original judgement lacked evidence, and the main evidence submitted by the plaintiff did not meet the conditions of evidence cross-examination since the defendant did not appear in court, the plaintiff made false statements, etc. In accordance with Item (1), Item (2) and Item (4) of Article 207 of the Civil Procedure Law, the case shall be remanded for retrial supervision and shall be rectified in accordance with the law.

2. Shenzhen Guotai is a partnership company consisting of one general partner and one limited partner. It shall not be applied to the provision in Article 49 of the Partnership Law of the People's Republic of China that "with the unanimous consent of other partners, the company may be removed from the partnership by resolution", and the judgment of the original trial based on this article is a mistake in the application of the law.

In the absence of judicial interpretation, the literal meaning of legal provisions should be regarded as the premise and priority for understanding and application, otherwise, the interpretation of the law will fall into analogy and expand the scope of interpretation, resulting in the wrong application of the law.

Article 49 of the Partnership Law of the People's Republic of China: "Where a partner is under any of the following circumstances, his name may be removed by resolution with the unanimous



consent of the other partners: (1) failure to fulfill the obligation of capital contribution; (2) losses are caused to the partnership due to intentional or gross negligence; and (3) improper behaviors in the conduct of partnership affairs. This Article clearly states that the necessary condition for the resolution to delist is "by unanimous consent of the other partners", which necessarily means that more than two partners shall agree unanimously and if only one partner, it is impossible to satisfy the condition of "unanimous consent".

3. Beijing Khan and its investors stayed abroad due to personal threats and false accusations from the other party and then failed to participate in the original trial lawsuit. As the only participant in the lawsuit, Nations Investment made false statements and misled the court, and the evidence it submitted was false and not cross-examined in the trial, leading to the wrong judgment of the original trial, which should be corrected in a retrial in accordance with the law.

After the investment dispute between the two parties, on November 28, 2017, Nations Technologies reported to Shenzhen Municipal Public Security Bureau that the management team of Beijing Khan was suspected of duty encroachment. On December 21, 2017, Nations Technologies reported that it could not contact Shenzhen Khan (in fact, Luo Zhaoxue, the chairman of Nations Technologies, is well aware of the company's domestic and foreign offices, with no such situation of losing contact), which made Beijing Khan and its main working team stay overseas. This was caused by the false accusation and framing behaviors of the plaintiff of the original trial. Although the criminal case has not been investigated yet, Nations Technologies sued to remove the general partner status of Beijing Khan through Nations Investment under its control, which obviously showed that the prosecution of the plaintiff in the original trial was not legitimate.

In addition, according to Article 11 of the Supreme People's Court on the Trial of Cases Involving the Economic Disputes Provisions on Some Issues of Economic Crime Suspicion", if a case accepted by a people's court as an economic dispute is deemed not to be an economic dispute case but suspected of economic crimes after trial, it shall rule to reject the prosecution and transfer the relevant materials to a public security organ or procuratorial organ. Since Nations Technologies and Nations Investment under its control thought that Beijing Khan management team, which had job occupation and damaged the interests of the partnership, should belong to the criminal case and should not file the lawsuit when having not determined the cases, and the court should not make civil trial and judgment when there were no conclusions in criminal cases.

The assets and investment incomes of the partnership enterprise involved the rights and interests of the investment funds corresponded by the Beijing Khan. Nations Technologies and Nations Investment under its control conducted false accusation first and then took the opportunity to file a civil lawsuit, and its intention to seize the investment income of Beijing Khan is very obvious and should not be supported by the law.

In summary, new evidence in this case is enough to overturn the original judgment, and the basic facts of the original judgment are not proved by evidence. The main evidence submitted by the plaintiff does not meet the requirements of evidence cross-examination due to the defendant's failure to appear in court and the plaintiff's false statement. In addition, the basic facts, such as "the persons' whereabouts were unknown and contact was lost, resulting in the interests of the partnership, plaintiff and creditor in a highly uncertain and dangerous state', verified by the judgment of the original trial were not supported by evidence, and the judgment obviously applied the wrong law, which ultimately led to the wrong judgment of the original trial of the case. In



FILED: NEW YORK COUNTY CLERK 03/12/2024 10:18 AM
NYSCEF DOC. NO. 12
Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 7 of 90
INDEX NO. 152210/2024
RECEIVED NYSCEF: 03/12/2024
135

accordance with the provisions of Article 207 of the Civil Procedure Law, we hereby apply to the court for a retrial.

Shenzhen Intermediate People's Court

Applicant: Beijing Qilong Pharmaceutical Holding Co., Ltd.

Legal representative: Zhang Junqi

January 20, 2022



Evidence Directory

| No. | Evidence Name | Proved Facts | Evidence Sources | Page Amount |
|---|---|---|---|---|
| Group 1: Confirm that on April 1, 2014, Shenzhen Qianhai Khan Funds Management Co., Ltd. was registered and established in Qianhai, Shenzhen. The company's business scope includes the entrusted management of equity investment funds, entrusted asset management, investment management, equity investment, etc. On August 7, 2015, Shenzhen Khan established the wholly owned Beijing Qilong Pharmaceutical Holding Co., Ltd. | | | | |
| 1 | Enterprise credit information of Shenzhen Qianhai Khan Funds Management Co., Ltd | On April 1, 2014, Shenzhen Qianhai Qilong Fund Management Co., Ltd. was registered and established. The business scope of the company includes entrusted management of equity investment funds, entrusted asset management, investment management, equity investment, etc. | Online public information | |
| 2 | Yunnan International Trust Co., Ltd. Qilong Darwin Technology Hedge First-phase Securities Investment Pooled Funds Trust Planning Document (Yunxinxin No. 2014-621002) | Since 2014, Luo Zhaoxue, the then chairman of Nations Technologies Co., Ltd., began to merge successively the trust fund that Shenzhen Khan acted as an investment consultant, and made fund investment through Shenzhen Khan. | Provided by the parties | |
| 3 | Enterprise credit information of Beijing Qilong Pharmaceutical Holding Co., Ltd. | On August 7, 2015, Shenzhen Khan established the wholly owned Beijing Qilong Pharmaceutical Holding Co., Ltd., and its business scope includes investment management, asset management, project investment, investment consulting, etc. | Online public information | |
| Group 2: On November 23, 2015, Shenzhen Qianhai Nations Investment Management Co., Ltd, a wholly owned subsidiary of Nations Technologies, signed the "Partnership Agreement on the Shenzhen Guotai Qixing Industrial Investment Fund Management Center (Limited Partnership)", and jointly established the Shenzhen Guotai Qixing Industrial Investment Fund Management Center (limited partnership) (hereinafter referred to as "Shenzhen Guotai") for a term of 20 years. Nations Investment Co., Ltd., as a limited partner, and Beijing Khan, as a general partner, fulfill the obligations of capital contribution as agreed. | | | | |
| 4 | Partnership Agreement of | On November 23, 2015, Shenzhen Qianhai Nations Investment Management | Provided by the parties | |



FILED: NEW YORK COUNTY CLERK 03/12/2024 10:18 AM
NYSCEF DOC. NO. 12
Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 9 of 90
INDEX NO. 152210/2024
RECEIVED NYSCEF: 03/12/2024
137

| | | | | |
|---|---|---|---|---|
| | Shenzhen Guotai Qixing Industrial Investment Fund Management Center (limited partnership) | Co., Ltd, a wholly owned subsidiary of Nations Technologies, signed the "Partnership Agreement on the Shenzhen Guotai Qixing Industrial Investment Fund Management Center (Limited Partnership)", and jointly established the Shenzhen Guotai Qixing Industrial Investment Fund Management Center (limited partnership) (hereinafter referred to as "Shenzhen Guotai") for a term of 20 years. Nations Investment Co., Ltd., as a limited partner, and Beijing Khan, as a general partner. | | |
| 5 | Articles of association of Shenzhen Guotai Qixing Industrial Investment Fund Management Center (limited partnership) | | Provided by the parties | |
| 6 | Receipt from CCB | On December 16, 2016, Beijing Qilong Pharmaceutical Holding Co., Ltd. fulfilled its investment obligations with the partnership through the telegraphic transfer of CCB, faithfully fulfilling the investment obligations agreed in the partnership agreement. | Provided by the parties | |
| Group 3: Shenzhen Guotai established a merger team and carried out investment activities as agreed in the agreement. On December 8, 2015, Nations Investment Co., Ltd. and Beijing Khan jointly decided to invest 35 million dollars in Guotaiqixing Biomedical International (Singapore) PTE, Ltd. The partnership entrusted a third-party audit institution to audit and issue an audit report on its financial situation from January 1, 2016 to November 30, 2016, showing that the financial situation of the company was normal. | | | | |
| 7 | Enterprise overseas investment certificate | On October 23, 2015, the partnership obtained the Enterprise Overseas Investment Certificate in accordance with the law and invested in Guotaiqixing Biomedical International (Singapore) PTE. Ltd., whose business scope is technology and drug research and development in the field of biomedicine. | Provided by the parties | |
| 8 | Investment resolution | On December 8, 2015, the partners | Provided by the | |



| | | | | |
|---|---|---|---|---|
| | | unanimously agreed to invest 35 | parties | |
| 9 | Partnership resolution | million dollars in Guotaiqixing Biomedical International (Singapore) PTE. Ltd. | Provided by the parties | |
| 10 | Audit Report (December 21, 2016) | On December 21, 2016, Shenzhen Huilong Certified Public Accountants (general partnership), a third-party auditing institution, issued an audit report to audit its financial situation from January 1, 2016 to November 30, 2016, showing that the company's financial situation was normal. | Provided by the parties | |

Group 4: Nations Investment and Luo Zhaoxue violated the agreed investment direction of the pharmaceutical merger, but instead proposed to carry out a chip industry merger, ignoring the investment agreement and the current situation of the company's project team. In September 2017, Luo Zhaoxue went again to the American office to meet Dai Xuefeng. Luo Zhaoxue claimed himself to be a spy, reiterated that  Technologies was not interested in pharmaceutical mergers, and threatened the safety of the domestic family. The public information showed his possible involvement in espionage and other illegal criminal activities, and Shenzhen Khan and its investors were forced to liquidate for safety considerations.

| | | | | |
|---|---|---|---|---|
| 11 | Announcement of Nations Technologies Co., Ltd. on the framework agreement signed by the wholly-owned subsidiary | On June 16, 2017, Nations Technologies Co., Ltd. issued a notice on disclosing matters regarding the Framework Agreement on the industrialization of the second/third generation integrated circuit epitope technology and other matters of its wholly-owned subsidiary, Nations Investment, and Chen Yaping technical team. | Online public information | |
| 12 | World Trade Center visitor logs | On September 12, 2017, Luo Zhaoxue met with Dai Xuefeng in the American office of the partnership. | Provided by the parties | |
| 13 | Request for Detention of U.S. District Court, California | | Provided by the parties | |
| 14 | Publicity information of China Securities Regulatory Commission (CSRC) official website | On September 10, 2021, China Securities Regulatory Commission (CSRC) found that there was a fictitious receivable collection problem in Nations Investment Co., Ltd., a wholly-owned subsidiary of Nations Technologies Co., Ltd., which affected the accuracy of the company's disclosure data. Luo Zhaoxue served as the | Online public information | |



FILED: NEW YORK COUNTY CLERK 03/12/2024 10:18 AM
NYSCEF DOC. NO. 12

INDEX NO. 152210/2024
RECEIVED NYSCEF: 03/12/2024

Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 11 of 90

139

| | | chairman of the company from January 2014 to May 2018 and was taken to issue a warning letter according to law. | | |
| --- | --- | --- | --- | --- |

Submitted by: Zhang Junqi
January 20, 2022
Beijing Qilong Pharmaceutical Holding Co., Ltd.



# Shenzhen Intermediate People's Court, Guangdong

## Notification of Case Acceptance

(2022) Yue 03 Minshen No.59

Beijing Qilong Pharmaceutical Holding Co., Ltd.:

Given the partnership dispute case of you (unit) v. Shenzhen Qianhai Nations Investment Management Co., Ltd., our court filed the case on January 26, 2022, with the case number of No. (2022) Yue 03 Minshen 59. The relevant matters concerning the acceptance of the case are hereby notified as follows:

1. In the course of litigation, the parties must exercise their litigation rights according to law and have the right to exercise the litigation rights prescribed in Articles 49, 50 and 51 of the Civil Procedure Law of the People's Republic of China, while must observe the litigation order and perform the litigation obligations.

2. A natural person shall submit a copy of his/her id card or pass or passport; A legal person or any other organization shall submit a copy of its business license or legal person code certificate, and the identity certificate of its legal representative or principal responsible person.

3. The parties and legal agents may appoint one or two persons to act as the agent ad litem.

When entrusting another person to act on his behalf in litigation, a power of attorney signed or sealed by the principal must be submitted to the people's court. The power of attorney must specify the entrusted matters and the limits of authority. An agent ad litem must obtain special authority from his principal to admit, waive or alter claims, compromise or file a counterclaim or appeal.

The power of attorney mailed or delivered by means of a citizen of the People's Republic of China residing abroad must be certified by the embassy or consulate of the People's Republic of China accredited to that country. If there is no embassy or consulate in that country, the certificate shall be issued by an embassy or consulate accredited to that third country that has diplomatic relations with the People's Republic of China, and then transmitted to the embassy or consulate accredited to that third country, or by a local patriotic overseas Chinese organization.

4. In accordance with the provisions of the Supreme People's Court on The Publication of Judicial Documents by the People's Courts on the Internet, effective judicial documents made by the court shall be published on the Chinese Judicial Documents Website. If you believe that the case involves personal privacy or trade secrets and apply for technical treatment of the relevant content in the judgment document or apply for non-publication, you should submit the application in writing and explain the specific reasons within three days after the judgment document is served at the latest. If, after examination, the court considers that the reasons are justified, relevant contents may be omitted or not made public when the written judgment is published.

5. The case acceptance fee of RMB 0 shall be paid in advance within 7 days after the receipt of this notice (please refer to The Payment Notice of Shenzhen Non-Tax Income for details). If it is really difficult to pay the case acceptance fee in advance, it may apply to the court in writing for deferment, reduction or exemption of the payment within the period of pre-payment. The court shall examine



Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 13 of 90

141

and decide whether to approve the application. If the application for deferment, reduction or exemption is not submitted within the time limit, the court shall withdraw the lawsuit according to law.

January 26, 2022
Seal, Shenzhen Intermediate People's Court of Guangdong



FILED: NEW YORK COUNTY CLERK 03/12/2024 10:18 AM

NYSCEF DOC. NO. 12

INDEX NO. 152210/2024

RECEIVED NYSCEF: 03/12/2024

Case 1:24-cv-03142-UA    Document 1-3    Filed 04/24/24    Page 14 of 90

142

# TAB 3

## WARRANT TO ACT

**Subject matter: LEGAL REPRESENTATION AND ADVISE FOR HC/S 1027/2020
GUOTAIQIXING BIOMEDICAL INTERNATIONAL (S) PTE. LTD. V DAI XUEFENG & 2 ORS**

I, <u>DAI XUEFENG (ERIC) (Passport No.    3878) of</u>

_____, do hereby confirm and agree to be

bound by the terms set out in this letter and the document entitled Client Liaison Information and

Standard Terms of Engagement attached to this letter.

I hereby authorize M/s Harry Elias Partnership LLP to be my solicitors in relation to the above

matter and other matters incidental to the above matter, including representing me in Court or

any other proceedings, bringing or defending or discontinuing any proceedings, including any

appeals therefrom.

Signature        :

Name            : DAI XUEFENG (ERIC)

Passport No.    :    2878

Date            :    May / 26 / 2022

FILED: NEW YORK COUNTY CLERK 03/12/2024 10:18 AM
INDEX NO. 152210/2024
NYSCEF DOC. NO. 12
RECEIVED NYSCEF: 03/12/2024

Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 16 of 90

144

# TAB 4



**Ark Law Corporation**
6 Shenton Way
#22-08, OUE Downtown 2
Singapore 068809

T: +65 6592 8632
W: www.arklaw.com.sg

31 May 2022

*We do not accept service of court documents by fax.*

**BY EMAIL ONLY**

**Harry Elias Partnership LLP**
4 Shenton Way
#17-01, SGX Centre 2
Singapore 068807

Our Ref:
EJL.20200077

Your Ref:
-

Attention:  Mr Philip Fong / Mr William Khoo /
            Mr Eugene Quek

No. of page(s): 2

Dear Sirs

**HC/S 1027/2020 ("Suit 1027")**
**BETWEEN GUOTAIQIXING BIOMEDICAL INTERNATIONAL (S). PTE LTD. AND DAI XUEFENG, ZHANG JUNQI AND XU XINMANNI**

1.  We refer to your letter dated 30 May 2022.

2.  As your client knows, he has had substantial time to instruct solicitors and to prepare his Defence. Among other things:

    (a)  HC/RA 317/2021 and HC/RA 352/2021 were heard and disposed of by the Honourable Justice Valerie Thean on 11 May 2022 (19 days before your 30 May 2022 letter).

    (b)  By a Correspondence from Courts dated 17 May 2022, the Court had directed that he file and serve his Defence by 4.00 p.m. on 31 May 2022 (13 days before your 30 May 2022 letter).

3.  Notwithstanding the above, your client has provided no explanation as to why an extension of time is required for his filing and why he had purportedly delayed in instructing your firm as to his Defence, or why such a lengthy extension of time of <u>four weeks</u> is required.

4.  These matters are particularly pertinent since his request comes only at the eleventh hour on the eve of the filing deadline.

5.  Further, we note that:

    (a)  by a letter dated 25 January 2022, your client had disclosed to the Court a copy of an email chain between 17 and 24 January 2022 in which your client had approached your firm to act for him in this Suit; and

Ark Law Corporation (UEN 201934598K) is a law corporation with limited liability.

This document is for the addressee(s) only and may contain confidential information and/or be subject to legal privilege. If you have received this in error, please contact us immediately.



(b)  by an email dated 4 May 2022 which was copied to your firm, your client had informed the Court that "*Harry Elias Partnership and solicitor Philip Fong have agreed to represent [him] as a filing agent capacity in this matter, and [he had] already executed an engagement letter with Harry Elias*".

However, according to paragraph 3 of your 30 May 2022 letter, your firm was only "*just been instructed to act*".

6.  In view of these circumstances, it is incumbent on your client to explain when he had engaged your firm to act for him in a substantive capacity (*i.e.* other than as a filing agent) and to provide documentary evidence in support.

7.  Considering the matters herein, our client is unable to consent to the extension of time sought by your client.

8.  In the event that your client elects to make an application to Court for an extension of time, your client's affidavit ought to address the matters set out in this letter and properly explain the reasons for his request.

9.  In the meantime, all our client's rights are reserved.


Your faithfully

**Ark Law Corporation**
Eugene Low

D:   +65 6592 8634
E:   eugene.low@arklaw.com.sg

cc   (1)  client

      (2)  Instructed Counsel
            **Ms Aurill Kam**
            **Legal Clinic LLC**
            20 Cross Street
            #02-03, China Court, Cross Street Exchange
            Singapore 048422

      (3)  Instructed Counsel
            **Mr Calvin Liang**
            **Calvin Liang LLC**
            19 Duxton Hill
            Singapore 089602



**Ark Law Corporation**
6 Shenton Way
#22-08, OUE Downtown 2
Singapore 068809

T: +65 6592 8632
W: www.arklaw.com.sg

1 June 2022

*We do not accept service of court documents by fax.*

**BY EMAIL ONLY**

**Harry Elias Partnership LLP**
4 Shenton Way
#17-01, SGX Centre 2
Singapore 068807

<u>Our Ref:</u>
EJL.20200077

<u>Your Ref:</u>
-

<u>Attention:</u>   Mr Philip Fong / Mr William Khoo /
                Mr Eugene Quek

No. of page(s): 2

Dear Sirs

**HC/S 1027/2020 ("Suit 1027")**
**BETWEEN GUOTAIQIXING BIOMEDICAL INTERNATIONAL (S). PTE LTD. AND DAI XUEFENG, ZHANG JUNQI AND XU XINMANNI**

1.    We refer to the captioned matter.

2.    As you know, your client was directed to file and serve his Defence by 4.00 p.m. on 31 May 2022. As he has failed, refused and/or neglected to do so, we hereby give you notice that our client intends to enter default Judgment against your client.

3.    In the meantime, all our client's rights are reserved.

Your faithfully

**Ark Law Corporation**
Eugene Low

D:   +65 6592 8634
E:   eugene.low@arklaw.com.sg

cc   (1)  client

     (2)  Instructed Counsel
          **Ms Aurill Kam**
          **Legal Clinic LLC**
          20 Cross Street

---

Ark Law Corporation (UEN 201934598K) is a law corporation with limited liability.
This document is for the addressee(s) only and may contain confidential information and/or be subject to legal privilege. If you have received this in error, please contact us immediately.



#02-03, China Court, Cross Street Exchange
Singapore 048422

(3)  Instructed Counsel
**Mr Calvin Liang**
**Calvin Liang LLC**
19 Duxton Hill
Singapore 089602

FILED: NEW YORK COUNTY CLERK 03/12/2024 10:18 AM
INDEX NO. 152210/2024

NYSCEF DOC. NO. 12

Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 21 of 90

RECEIVED NYSCEF: 03/12/2024

149

# TAB 5

FILED: NEW YORK COUNTY CLERK 03/12/2024 10:18 AM
INDEX NO. 152210/2024
NYSCEF DOC. NO. 12
RECEIVED NYSCEF: 03/12/2024

Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 22 of 90

150



**Ark Law Corporation**
6 Shenton Way
#22-08, OUE Downtown 2
Singapore 068809

T: +65 6592 8632
W: www.arklaw.com.sg

18 June 2022

*We do not accept service of court
documents by fax.*

**BY EMAIL ONLY**

**Harry Elias Partnership LLP**
4 Shenton Way
#17-01, SGX Centre 2
Singapore 068807

<u>Our Ref:</u>
EJL.20200077

<u>Your Ref:</u>
-

<u>Attention:</u>   Mr Philip Fong / Mr William Khoo /
               Mr Eugene Quek

No. of page(s): 2

Dear Sirs

**HC/S 1027/2020 ("Suit 1027")**
**BETWEEN GUOTAIQIXING BIOMEDICAL INTERNATIONAL (S). PTE LTD. AND DAI XUEFENG, ZHANG JUNQI AND XU XINMANNI**

1.    We refer to the captioned matter, and to the Defence (Amendment No. 1) which was filed and served on us at 11.43 p.m. on 16 June 2022 (the "**Amended Defence**").

2.    Your client has pleaded at paragraph 6A of the Amended Defence that Suit 1027 "*should be stayed pending the resolution of the Shenzhen Appeal*". Our client is unable to see any basis in law or fact for such a stay.

3.    Notwithstanding the above, if your client truly believes that there are any grounds for a stay of Suit 1027, then he should be proceeding expeditiously with a formal application for stay of proceedings ("**Intended Stay Application**"). Accordingly, please let us have your client's proposal on timelines for the filing of:

    (a)  his Intended Stay Application; and
    (b)  subsequent affidavits in reply.

4.    Further, in the event that your client makes the Intended Stay Application, our client ought not to be put to the expense of filing its Reply by 1 July 2022 at this time. Accordingly, we propose that the filing of our client's Reply be held in abeyance pending the outcome of your client's Intended Stay Application (if such is filed). Please let us know if your client agrees.

5.    In the event that parties are able to agree on the aforesaid matters, parties may then write in to update the Court and request an adjournment of the Pre-Trial Conference presently fixed on 21 June 2022 (the "**PTC**"). Otherwise, our client intends to seek directions from the Honourable Court at the PTC.

---

Ark Law Corporation (UEN 201934598K) is a law corporation with limited liability.

This document is for the addressee(s) only and may contain confidential information and/or be subject to legal privilege. If you have received this in error, please contact us immediately.

FILED: NEW YORK COUNTY CLERK 03/12/2024 10:18 AM
INDEX NO. 152210/2024
NYSCEF DOC. NO. 12
RECEIVED NYSCEF: 03/12/2024

Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 23 of 90

151



6. In order that parties will have sufficient time to do the necessary discussed in paragraph 5 herein, please let us have your client's response to paragraphs 3 and 4 herein by **noon on Monday, 20 June 2022**.

7. In the meantime, all our client's rights are reserved.

Your faithfully

**Ark Law Corporation**
Eugene Low

D: +65 6592 8634
E: eugene.low@arklaw.com.sg

cc (1) client

(2) Instructed Counsel
**Ms Aurill Kam**
**Legal Clinic LLC**
20 Cross Street
#02-03, China Court, Cross Street Exchange
Singapore 048422

(3) Instructed Counsel
**Mr Calvin Liang**
**Calvin Liang LLC**
19 Duxton Hill
Singapore 089602

FILED: NEW YORK COUNTY CLERK 03/12/2024 10:18 AM

INDEX NO. 152210/2024

NYSCEF DOC. NO. 12

RECEIVED NYSCEF: 03/12/2024

Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 24 of 90

152

# TAB 6

**Ark Law Corporation**
6 Shenton Way
#22-08 OUE Downtown 2
Singapore 068809

| | |
|---|---|
| **Date**: | 23 June 2022 |
| **Your ref**: | |
| **Our ref**: | PF/KWM/QYC/2022033868 |
| **Direct**: | +65 6361 9819 / 9373 / 9837 |
| **Email**: | PhilipFong@harryelias.com / |
| | WilliamKhoo@harryelias.com / |
| | EugeneQuek@harryelias.com |

**Attention: Mr Eugene Jeddiah Low**


 **BY EMAIL ONLY**
(eugene.low@arklaw.com.sg /
info@arklaw.com.sg)

Dear Sirs,

**HC/ S 1027/2020 ("SUIT 1027")**


1.    We refer to the above matter and your letter dated 18 June 2022 ("**Letter**").

2.    Our client has instructed us to file an application to stay Suit 1027 ("**Stay Application**"), pending the determination of the appeal before the Shenzhen Intermediate People's Court in case number (2002) Guangdong 03 Civil Appeal No. 59 ("**Shenzhen Appeal**") involving, amongst others, Beijing Khan and Nations Investment.

3.    In the circumstances, our client proposes the following timelines for the Stay Application:

(a)    Summons for the Stay Application together with our client's supporting affidavit to be filed within 4 weeks ie by 21 July 2022;
(b)    Your client is to file their reply affidavits within 2 weeks thereafter ie by 4 August 2022; and
(c)    Our client is to file his reply affidavit, if any, within 2 weeks after service of your client's reply affidavits.

4.    Further to the above, in the interest of saving costs and narrowing the issues in dispute in the Stay Application, kindly let us know if your client consents to an extension of time for our client to file the Stay Application notwithstanding that the time limited for filing a Defence has passed.

5.    In the meantime, our client has no objections to holding in abeyance the timeline for the filing of your client's Reply pending disposal of the Stay Application.

6.    Kindly let us have your client's response in respect of paragraphs 3 and 4 of this letter by **27 June 2022**.

7.    All our client's rights are expressly reserved.

Yours faithfully,

**Philip Fong / William Khoo / Eugene Quek**
Harry Elias Partnership LLP


Cc.    (1)    **Client**

(2)    **Ms Aurill Kam**
Legal Clinic LLC- By Email Only

(3)    **Mr Calvin Liang**
Calvin Liang LLC – By Email Only

FILED: NEW YORK COUNTY CLERK 03/12/2024 10:18 AM

NYSCEF DOC. NO. 12

INDEX NO. 152210/2024

RECEIVED NYSCEF: 03/12/2024

Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 27 of 90

155

# TAB 7



**Ark Law Corporation**
6 Shenton Way
#22-08, OUE Downtown 2
Singapore 068809

T: +65 6592 8632
W: www.arklaw.com.sg

23 June 2022

*We do not accept service of court documents by fax.*

**BY EMAIL ONLY**

**Harry Elias Partnership LLP**
4 Shenton Way
#17-01, SGX Centre 2
Singapore 068807

<u>Our Ref:</u>
EJL.20200077

<u>Your Ref:</u>
-

<u>Attention:</u>   Mr Philip Fong / Mr William Khoo /
              Mr Eugene Quek

No. of page(s): 2

Dear Sirs

**HC/S 1027/2020 ("Suit 1027")**
**BETWEEN GUOTAIQIXING BIOMEDICAL INTERNATIONAL (S). PTE LTD. AND DAI XUEFENG, ZHANG JUNQI AND XU XINMANNI**

1.   We refer to your letter dated 23 June 2022.

2.   Thank you for agreeing to hold in abeyance the timeline for the filing of our client's Reply pending disposal of your client's stay application ("**Stay Application**").

3.   <u>**First**</u>, our client does not consent to the extension of time sought in paragraph 4 of your 23 June 2022 letter.

4.   <u>**Second**</u>, our client is not agreeable to your client's proposal for him to have 4 weeks to file his stay application ("**Stay Application**") by 21 July 2022.

5.   Our client considers that the 4 weeks your client seeks will delay the fair and expeditious conduct of the proceedings given that, by your client's own account, he has had significant time to consider and bring his stay application. Among other things:

     (a)   According to the Defence (Amendment No. 1) filed on 17 June 2022, your client was made aware of the action to remove Beijing Khan Pharmaceutical Holdings Co., Ltd. ("**Beijing Khan**") as a partner of Shenzhen Guotaiqixing Industry Investment Fund Management Centre LLP (the "**2018 Shenzhen Action**") by way of the Statement of Claim, which was first served on your client more than 1 year ago on 22 February 2021.

     (b)   Beijing Khan had filed its application seeking a review of the Judgment obtained in the 2018 Shenzhen Action some 5 months ago on 26 January 2022.

Ark Law Corporation (UEN 201934598K) is a law corporation with limited liability.

This document is for the addressee(s) only and may contain confidential information and/or be subject to legal privilege. If you have received this in error, please contact us immediately.



(c)   Your client had already decided to file the Stay Application by the time of the filing of the Defence (Amendment No. 1) on 17 June 2022.

6.   In the premises, in respect of the timelines indicated in paragraph 3 of your 23 June 2022 letter, our client proposes the following timelines instead:

(a)   your client's Stay Application be filed within 10 days, *i.e.* by 4 July 2022;

(b)   our client to file its reply affidavit within 3 weeks thereafter, *i.e.* by 25 July 2022; and

(c)   your client to file his reply affidavit, if any, within 2 weeks thereafter, *i.e.* by 8 August 2022.

7.   Please let us know **by close of business tomorrow** whether your client is agreeable to our proposed timelines. In the event that your client is not agreeable to our proposed timelines, we intend to surface this to the PTC SAR Cornie Ng for determination and fixing of timelines, in which case we will seek costs for writing in and any PTC that may have to be held.

8.   For the avoidance of doubt, nothing herein should be construed as an acceptance on the part of our clients that your client has any basis to file a stay application, whether at this juncture or at all.

9.   All our client's rights are reserved.


Your faithfully

**Ark Law Corporation**
Eugene Low

D:   +65 6592 8634
E:   eugene.low@arklaw.com.sg

cc   (1)   client

(2)   Instructed Counsel
**Ms Aurill Kam**
**Legal Clinic LLC**
20 Cross Street
#02-03, China Court, Cross Street Exchange
Singapore 048422

(3)   Instructed Counsel
**Mr Calvin Liang**
**Calvin Liang LLC**
19 Duxton Hill
Singapore 089602


23 June 2022                                                                                      Page 2 of 2

FILED: NEW YORK COUNTY CLERK 03/12/2024 10:18 AM

NYSCEF DOC. NO. 12

Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 30 of 90

INDEX NO. 152210/2024

RECEIVED NYSCEF: 03/12/2024

158

# TAB 8

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| KHAN FUNDS MANAGEMENT AMERICA, INC. and XUEFENG DAI, | Index No.: |
| Plaintiffs, | **SUMMONS** |
| v. | Plaintiffs designate New York County as the place For trial. |
| NATIONS TECHNOLOGIES INC., NATIONS TECHNOLOGIES (USA) INC., YINGTONG SUN, ZHAOXUE LUO, BAOXIN HUANG, JUNJIE YU, and DOES 1-20, | The basis for venue is CPLR 503(a) and 503(c). |
| Defendants. | |

**TO THE ABOVE NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the annexed Complaint in this action and to serve a copy of your Answer on the undersigned attorneys for plaintiffs within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if service is made by any method other than personal delivery to you within the State of New York. If you fail to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: Garden City, New York
      April 6, 2022

                                **KENNETH S. FERARU, P.C.**

                                By:   /s/ Kenneth S. Feraru
                                       Kenneth Feraru, Esq.
                                       1225 Franklin Ave., Ste. 325
                                     Garden City, New York 11530
                                     P: (516)535-3333
                                     KFeraruesq@aol.com

1

FILED: NEW YORK COUNTY CLERK 03/02/2022 00:28 PM
NYSCEF DOC. NO. 12
INDEX NO. 152098/2022
RECEIVED NYSCEF: 03/12/2022
160
Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 32 of 90

**LAW OFFICES OF WEI GU, ESQ., P.C.**

By:     /s/ Wei Gu
         Wei Gu, Esq.
         13514 Northern Blvd., Flr. 2
         Flushing, New York 11354
         P: (718) 600-6886
         WeiGulaw@gmail.com

*Attorneys for Plaintiffs*

To:     **NATIONS TECHNOLOGIES INC.**            **NATIONS TECHNOLOGIES (USA) INC.**
         National Technology Building, No. 109      3509 Langdon Common
         Baoshen Road, Gaoxin North District        Fremont, California 94538
         Nanshan District
         Shenzhen Guangdong 518057
         P.R. China

         **YINGTONG SUN**                           **YINGTONG SUN**
         National Technology Building, No. 109      3509 Langdon Common
         Baoshen Road, Gaoxin North District        Fremont, California 94538
         Nanshan District
         Shenzhen Guangdong 518057
         P.R. China

         **ZHAOXUE LUO**                            **BAOXIN HUANG**
         National Technology Building, No. 109      National Technology Building, No. 109
         Baoshen Road, Gaoxin North District        Baoshen Road, Gaoxin North District
         Nanshan District                           Nanshan District
         Shenzhen Guangdong 518057                  Shenzhen Guangdong 518057
         P.R. China                                 P.R. China

         **JUNJIE YU**
         National Technology Building, No. 109
         Baoshen Road, Gaoxin North District
         Nanshan District
         Shenzhen Guangdong 518057
         P.R. China

2

Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 33 of 90
161

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| KHAN FUNDS MANAGEMENT AMERICA, INC. and XUEFENG DAI, | Index No.: |
| Plaintiffs, | |
| v. | **VERIFIED COMPLAINT** |
| NATIONS TECHNOLOGIES INC., NATIONS TECHNOLOGIES (USA) INC., YINGTONG SUN, ZHAOXUE LUO, BAOXIN HUANG, JUNJIE YU, and DOES 1-20, | |
| Defendants. | |

Plaintiffs, KHAN FUNDS MANAGEMENT AMERICA, INC. ("KHAN FUNDS") and
XUEFENG DAI ("DAI") (together with KHAN FUNDS, "Plaintiffs"), bring this Complaint
against defendants, NATIONS TECHNOLOGIES INC. ("NATIONS"), NATIONS
TECHNOLOGIES (USA) INC. ("NATIONS USA"), YINGTONG SUN ("SUN"), ZHAOXUE
LUO ("LUO"), BAOXIN HUANG ("HUANG"), JUNJIE YU ("YU") and DOES 1-20
(collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

### I.  RICO ALLEGATIONS

1.  In this action, Plaintiffs seek to end an illegal pattern of racketeering by
Defendants and seek relief from ongoing unlawful activity.  Defendants have harmed and
continue to harm Plaintiffs, and their racketeering enterprise remains a direct threat to Plaintiffs'
interests.

2.  Defendants and others sought to illicitly procure protected technologies for end
use in China, and to that end, Defendants recruited, solicited, financed, and managed a
worldwide network of individuals and entities in New York, California, and elsewhere in

1

furtherance of their scheme. Defendants and others committed multiple predicate acts of racketeering activity on multiple occasions and in violation of various federal and state statutes, including the misappropriation of certain commodities and technologies in violation of, *inter alia*, the International Emergency Economic Powers Act ("IEEPA" or the "Economic Powers Act"), 50 U.S.C. § 1701 et seq., which restricts the export of commodities and technologies outside the United States; the unlawful laundering of racketeering proceeds in violation of, *inter alia*, 18 U.S.C. § 1956; and the commission of extortionate and solicitation schemes in violation of, *inter alia*, 18 U.S.C. § 1951, New York Penal Law § 155.05(2)(e), and 18 U.S.C. § 1831.

3.    For more than a decade and in a plan which is ongoing, Defendants and others worked in concert with one another, committing numerous and repeated violations of various federal and state statutes. Defendants knowingly agreed to carry out a scheme to solicit, defraud, and harm Plaintiffs economically and otherwise through a pattern of interstate racketeering activity, which included the operation and/or management of a RICO enterprise constituting LUO, SUN, HUANG, and YU (the "Individual Members"), together with NATIONS and NATIONS USA (the "Corporate Members") and others known and unknown.

## II.    OVERVIEW OF THE ENTERPRISE

4.    Beginning on a date unknown, but no later than in or around June 2011 and continuing through the date of this Complaint, in New York County and elsewhere, Defendants and others entered into a scheme to illicitly acquire protected technologies from companies headquartered or with offices in the United States and elsewhere for end use in China. Defendants and several of their associates share long-standing personal, professional, and financial ties, and these pre-existing affiliations and common ties facilitated the ability of Defendants to combine, merge, and conspire with themselves and others to form their

2

racketeering enterprise with the common purpose of illicitly procuring protected technologies for end use in China (hereinafter referred to as the "Enterprise").

5.      Defendants and other members of the Enterprise committed deliberate and repeated acts of misappropriation and the illicit procurement of protected commodities and technologies from locations in the United States and elsewhere, and each received income and other benefits and enriched themselves directly and indirectly from such efforts. To support the Enterprise, Defendants recruited, solicited, groomed, financed, and managed various business, finance, science, and technology professionals like DAI to illicitly access and acquire protected technologies, and Defendants conspired to recruit, solicit, direct, and incentivize Plaintiffs and others to commit crimes in furtherance of Enterprise objectives.

6.      At the time the Enterprise sought to solicit and recruit Plaintiffs to the Enterprise, DAI was a renowned hedge fund manager who would establish KHAN FUNDS as the global headquarters for his businesses in New York County. KHAN FUNDS served as the umbrella company to all of DAI's affiliated entities located in China, Singapore, and elsewhere, and the financial strength and reputation of KHAN FUNDS and DAI presented the Enterprise with an opportunity to use Plaintiffs to facilitate the illicit acquisition of protected technologies and launder the proceeds of illegal racketeering activity and finance the Enterprise.

7.      Beginning on a date unknown but no later than in or around May 2014 through no earlier than in or around November 2017, in New York County and elsewhere, Defendants, together with others, knowingly and with the intent to solicit, recruit, and defraud Plaintiffs, devised, participated in, and executed a scheme to solicit Plaintiffs' membership and participation in the Enterprise, defraud Plaintiffs as to material matters, and to use threats of force to compel Plaintiffs to commit multiple crimes in furtherance of the Enterprise, including

3

the illicit acquisition of protected technologies in violation of the Economic Powers Act and crimes indictable under Title 18, United States Code, Sections 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1831 (relating to economic espionage), 1832 (relating to theft of trade secrets), and 1956 (relating to the laundering of monetary instruments). Defendants and others further devised, participated in, and executed a scheme to extort RMB 300,000,000 from Plaintiffs in violation of 18 U.S.C. § 1951 and New York Penal Law § 155.05(2)(e) by use of threats of force, violence, and fear in an effort to use Plaintiffs to launder racketeering proceeds of the Enterprise and finance members of the Enterprise, in furtherance of Enterprise objectives.

## III.    THE OBSTRUCTION AND RETALIATION SCHEME AND OTHER HARM

8.     Beginning in September 2017, DAI immediately reported the criminal activity, solicitation efforts, and extortionate scheme of the Enterprise to the New York Field Office of the Federal Bureau of Investigation (the "FBI") and initiated investigatory proceedings with United States Department of Justice's ("DOJ") prosecutors at the United States Attorney's Office in the Southern District of New York.

9.     Beginning on a date unknown but no later than in or around November 2017 through no earlier than in or around September 2021 and continuing through the date of this Complaint, Defendants, together with others, did knowingly, intentionally, and corruptly conspire to inflict harm upon DAI using the tactic of criminalizing DAI and forcibly repatriating him to the PRC. In furtherance of Defendants' scheme to inflict harm upon DAI, Defendants adopted the telltale tactics of a forced repatriation scheme, by providing false information that DAI had committed various acts of criminal wrongdoing as a means to cause the issuance, and thereafter the global broadcast, of an arrest warrant for DAI in the PRC, and then activated a campaign to

4

surveil DAI and collected certain photo and/or video evidence in the State of New York about and concerning DAI.

10.    As set forth herein, non-party culpable person Yi-Chi Shih ("Shih") was arrested by federal authorities in January 2018 for violations of, *inter alia,* the Economic Powers Act, and approximately one year into Plaintiffs' cooperation with the FBI and the United States Attorney's Office, including disclosure of defendant LUO's relationship with non-party culpable person Yaping Chen ("Chen"), Chen and others were indicted on October 18, 2018, in the United States District Court for the Central District of California in the case titled, United States of America v. Yi-Chi Shih, et al., CR No. 18-00050 (the "Shih Matter"). As set forth herein, LUO admitted to financing and supervising Chen in furtherance of Enterprise business, and in the Shih Matter, Chen was indicted as a co-conspirator for his work in connection with the unlawful scheme to illicitly procure and export restricted commodities and technologies in violation of the Economic Powers Act. Upon information and belief, Chen caused substantial sums of money provided by the Enterprise to be deposited in the name of an offshore shell company organized in the British Virgin Islands, and Chen, at the direction of LUO and SUN, directed these funds to ultimately be distributed to other members of the Enterprise, including Shih. NATIONS USA and the non-party culpable entities in the State of New York associated with the Enterprise serve as the domestic nerve centers of the Enterprise and helped facilitate the operation and management of Enterprise affairs in the United States, including exercising oversight over Shih, Chen, and others. Thus, LUO and SUN, in their capacity as the ringleaders of the Enterprise, financed and directed Chen using Enterprise funds provided by NATIONS and others, and in turn, Chen used Enterprise funds to finance and pay Shih and other co-conspirators as compensation for their work in the development of the high technology industries in the PRC, and the Enterprise relied

5

FILED: NEW YORK COUNTY CLERK 03/02/2022 00:28 PM
INDEX NO. 152098/2022
NYSCEF DOC. NO. 12
Case 1.24-cv-03142-UA Document 1-3 Filed 04/24/24 Page 38 of 90
RECEIVED NYSCEF: 03/12/2022
166

on NATIONS USA and non-party culpable entities and individuals associated with the Enterprise located in the State of New York to oversee Enterprise activities in the United States.

11.     After becoming aware of the DOJ's criminal investigation of the Enterprise initiated by Plaintiffs, including the arrests and indictments of non-party culpable persons in the Shih Matter, and in an effort to avoid potential criminal prosecution in the United States and impede the government's investigation, Defendants engaged in a pattern of obstruction and retaliation by knowingly promulgating false and defamatory information accusing Plaintiffs of wrongdoing in an effort to deflect and distract attention from law enforcement and intimidate and influence Plaintiffs in violation of 18 USC § 1512 (relating to tampering with a witness, victim, or an informant) and 18 USC § 1513 (relating to retaliating against a witness, victim, or an informant).  By attempting to impede the criminal investigation into the Enterprise and deter Plaintiffs' cooperation with law enforcement, Defendants sought to avoid criminal prosecution for the illicit acquisition of protected commodities and technologies and sought to tamper, influence, and retaliate against Plaintiffs for their cooperation with law enforcement and accompanying interference with the Enterprise's unlawful scheme.

12.     As set forth herein, beginning on a date unknown but no later than in or around May 2018 and continuing through the present, Defendants arranged for the commencement of a corrupt and fraudulent lawsuit against DAI in the High Court of the Republic of Singapore.  The corrupt lawsuit commenced by Defendants was not pursued by lawful means, and constitutes a continued attempt of Defendants to extort and retaliate against Plaintiffs for cooperating with law enforcement in violation of, *inter alia*, 18 U.S.C. § 1951 (relating to extortion), 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant), and 18 U.S.C. § 1513 (relating to retaliating against a witness, victim, or an informant).

6

13.    Plaintiffs continue to be a victim of Defendants' racketeering and extortionate activity and other harmful conduct. Defendants and other members of the Enterprise must answer for their actions, and Plaintiffs bring this action to address the individual and collective conduct of Defendants under the statutes and common law discussed herein.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over Defendants pursuant to CPLR § 302(a)(2) because, as set forth in greater detail below, many of the acts, tortious conduct, transactions, practices, and other courses of conduct giving rise to the causes of action alleged in this Complaint occurred in New York County. Such acts, transactions, practices, and courses of conduct include, but are not limited to, the illicit acquisition of protected technologies in violation of the Economic Powers Act and crimes indictable under Title 18, United States Code, Sections 1343 (relating to wire fraud), 1344 (relating to financial institution fraud of banks located in New York County), 1956 (relating to the laundering of monetary instruments from bank accounts located in New York County, and the use of the New York County bank accounts as the conduit through which the Enterprise scheme and extortionate activity was to advance), 1030 (relating to the intentional access of KHAN FUNDS computers in New York County without authorization), 1951 (relating to extortion), and New York Penal Law § 155.05(2)(e).

15.    Jurisdiction over each of the defendants is also proper pursuant to CPLR § 302(a)(2) because the facts set forth herein establish conspiracies among Defendants. Each defendant was a member of the conspiracy, each defendant had an awareness of the effects of their activity on Plaintiffs in New York County, and all of the defendant conspirators committed an overt act in the State of New York to further the conspiracy and/or orchestrated the conspiracy as set forth in greater detail below. Defendants acted in concert with each other and with each

7

FILED: NEW YORK COUNTY CLERK 03/02/2022 00:28 PM
NYSCEF DOC. NO. 12
INDEX NO. 152098/2022
RECEIVED NYSCEF: 03/12/2022
Case 1:24-cv-03142-UA Document 1-3 Filed 04/24/24 Page 40 of 90
168

other's active support and approval to accomplish their common objectives.

16.     This Court has jurisdiction over Defendants pursuant to CPLR § 302(a)(3) because, as set forth in greater detail below, Defendants were directly involved in the coordination and organization of acts and courses of tortious conduct giving rise to the causes of action alleged in this Complaint, including, but not limited to, violations of 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. § 1513 (relating to retaliating against a witness, victim, or an informant), 18 U.S.C. § 1951 (relating to extortion), and directing the commission of a prima facie tort. Such acts and courses of tortious conduct caused injury to Plaintiffs in the State of New York and elsewhere, Defendants knew or should have known that such acts and courses of tortious conduct would have consequences in New York, and Defendants deliberately directed tortious conduct and communications to Plaintiffs in the State of New York knowing that those acts and communications would be received by Plaintiffs in the State of New York and would have consequence in New York.

17.     Jurisdiction over each of the Defendants is also proper pursuant to CPLR § 302(a)(1) because, as set forth in greater detail below, Defendants' activities in New York constitute transacting business in the State of New York, including, but not limited to, the maintenance of the Enterprise bank account in New York County with the deliberate intention of using the bank account to facilitate the Enterprise's scheme giving rise to Plaintiffs' causes of action, and Defendants' deliberate intention to project themselves into the State of New York by deliberately directing tortious and other communications using electronic and telephonic means to Plaintiffs in the State of New York to facilitate the transactions and communications giving rise to Plaintiffs' claims. Defendants' activities in New York further constitute transacting business in the State of New York because Defendants solicit business in the State of New York

8

and non-party culpable persons and entities of the Enterprise have offices and employees in the State of New York.

18.    Venue is proper in this Court pursuant to CPLR § 503 because plaintiff KHAN FUNDS maintains its principal office in New York County, and because a substantial part of the events giving rise to the claims occurred in New York County.

## PARTIES

19.    Plaintiff KHAN FUNDS MANAGEMENT AMERICA, INC. is a financial investment business incorporated on or around October 15, 2014 with its principal place of business located in New York County. KHAN FUNDS was established to serve as the global headquarters for all of DAI's affiliated businesses, including, to wit, Shenzhen Qianhai Qilong Fund Management Co., Ltd. a/k/a Shenzhen Qianhai Khan Fund Management ("Khan Funds China") and Beijing Qilong Pharmaceutical Holdings Co., Ltd. ("Beijing Khan"). At all relevant times herein, KHAN FUNDS and all related affiliated entities of KHAN FUNDS were wholly owned by DAI.

20.    Plaintiff XUEFENG DAI a/k/a Eric Dai is the founder, Chief Executive Officer, President, and sole shareholder of KHAN FUNDS and was approved for United States permanent residency status through the EB1-A (Alien of Extraordinary Ability) classification on the basis of his qualifications as a hedge fund manager in the PRC.

21.    Defendant NATIONS TECHNOLOGIES INC. is principally engaged in the design, manufacture, and distribution of semiconductors, also known as integrated circuits, and related key components. NATIONS is headquartered in Shenzhen, Guangdong, in the People's Republic of China ("PRC") and maintains satellite offices in the United States and Singapore.

22.    Defendant NATIONS TECHNOLOGIES (USA) INC. is a semiconductor research

9

and development company located in Fremont, California. NATIONS USA is a subsidiary of NATIONS.

23.    Defendant YINGTONG SUN is a citizen of the PRC. Since approximately 2005 and continuing through the present, SUN serves as General Manager and Chief Executive Officer of NATIONS. More recently, from 2018 and continuing through the present, SUN also serves as Chairman of the Board of Directors of NATIONS. Beginning on a date unknown, but no later than in or around August 2018 and continuing through the present, SUN serves as Chief Executive Officer of NATIONS USA.

24.    Defendant ZHAOXUE LUO, is a citizen of the PRC. Between approximately 2014 through 2018, LUO served as Chairman of the Board of Directors of NATIONS.Since no later than in or around April 2017, LUO has served as Vice-President of the China Association for Public Companies.

25.    Defendant BAOXIN HUANG, is a citizen of the PRC. HUANG previously served as Director of the Ministry of Supervision of the Office of State Council, at all relevant times a cabinet-level department of the PRC government. HUANG also served as Deputy Head of the Disciplinary Inspection Team for the Central Commission for Discipline Inspection. From approximately 2015 and continuing through the present, HUANG serves as Deputy Manager of Ping An Insurance (Group) Co. of China Ltd.

26.    Defendant JUNJIE YU, is a citizen of the PRC. From approximately 2014 through no earlier than 2018, YU served as CFO and Vice General Manager of NATIONS.

27.    Does 1-20 are named as additional defendants, whose identities are unknown at this time, noting that Plaintiffs have reason to believe that other individuals and/or entities may be willingly and knowingly working with one or more of the Defendants to support or authorize

10

the unlawful the acts, tortious conduct, transactions, practices, and other courses of conduct giving rise to the causes of action alleged in this Complaint. Plaintiffs' investigation into the identities and locations of Does 1-20 is continuing and Plaintiffs believe that substantial additional evidentiary support will exist to reveal the identifies and locations of Does 1-20.

## FACTUAL ALLEGATIONS

### I.    THE CONSPIRACY TO MISAPPROPRIATE PROTECTED TECHNOLOGIES

28.    The allegations herein alleged on information and belief are based on the investigation conducted by Plaintiffs. The investigation into the allegations herein is continuing and Plaintiffs believe that substantial additional evidentiary support will exist for the allegations herein after further investigation. Many of the relevant facts are known only by Defendants or are exclusively within their custody and control, and Plaintiffs believe that substantial additional evidentiary support will exist for the allegations herein after an opportunity to conduct discovery.

29.    According to estimates by the National Counterintelligence and Security Center, theft of American technologies and trade secrets by China costs the U.S. upwards of $600BN each year. Theft is widespread – the FBI estimates active "investigations involving China's attempted theft of US-based technology in all 56 of our field offices and spanning just about every industry sector."

30.    Against this backdrop of rapid PRC technological development through the misappropriation of protected technologies and other unlawful activity, beginning on a date unknown, but no later than in or about June 2011, and continuing through the date of this Complaint, Defendants and others, united by long-standing personal, professional, and financial ties, combined, merged, and conspired with themselves and others to form a racketeering enterprise with the common purpose of illicitly procuring protected technologies and

commodities for end use in China and entered into a scheme to illicitly acquire American and other foreign technologies, located in the United States, by any means, including through the commission of the crimes and acts set forth herein.

31.    Defendant NATIONS is a "leader in China's information security IC [integrated circuit] design industry" and is recognized as an "enterprise of integrated circuit design" and an "R&D powerhouse."  NATIONS is the current-day incarnation of the semiconductor research and development division of ZTE Corporation ("ZTE"), a Chinese telecommunications and technology company with a tortured history of illegal activity including the unlawful export of restricted U.S technologies to countries including Iran and North Korea.

32.    NATIONS and others were well positioned to develop China's high technology industries benefiting from the misappropriation of restricted technologies, and beginning on a date unknown, but no later than June 2011, NATIONS assumed a role in the Enterprise to, in part, finance Enterprise activities and implement misappropriated technologies, in furtherance of Enterprise affairs.

33.    Defendant NATIONS USA is a wholly-owned California subsidiary of NATIONS and is nominally engaged in semiconductor research and development.  At all times relevant herein, upon information and belief, the Enterprise has leveraged NATIONS USA to conceal its illicit activities and serve as the Enterprise's California base for the management of field operatives in the United States.

34.    Defendant LUO admits to a multi-decade history of engaging in illicit commercial and industrial theft across a broad range of industries for end use in the PRC and admits to personally profiting from his efforts thereon, including personally profiting from his work in connection with the Enterprise.  At all relevant times herein, LUO led the Enterprise and was

12

responsible for developing the objectives of the Enterprise, managing Enterprise finances, recruitment, and the coordination of member roles and responsibilities.

35. Defendant SUN is a chief lieutenant of LUO in the Enterprise. At all relevant times herein, SUN has conducted affairs of the Enterprise at the direction of LUO, including but not limited to acting in place and stead of LUO in Enterprise affairs, serving as a conduit between LUO and other members of the Enterprise, and supervising the operation of the Enterprise's California base. Upon information and belief, SUN has personally profited from his work in connection with the Enterprise.

36. At all relevant times herein, defendant YU was a chief lieutenant of LUO and SUN, and, at the direction of LUO and SUN, YU conducted the affairs of the Enterprise, including but not limited to executing the day-to-day administrative affairs of the Enterprise and managing Enterprise communications, including communications with Plaintiffs. YU was personally enriched and rewarded by the Enterprise and was appointed to lucrative management positions in various Enterprise projects.

37. Defendants HUANG and LUO share a longstanding personal and professional relationship spanning decades, and HUANG leveraged his cabinet-level positions in the PRC government and his decades-long relationship and common ties with LUO to participate in the affairs of the Enterprise and recruit members to the Enterprise, including his solicitation and recruitment of Plaintiffs as described herein.

38. Non-party culpable person Chen has decades of experience in semiconductor, photoelectric, and microwave transmission product development and management, and since 2007, Chen has served as General Manager of Chengdu RML Technology Company ("Chengdu RML"). Together with non-party culpable person Shih, Chen also served on the Board of

13

FILED: NEW YORK COUNTY CLERK 03/02/2022 00:28 PM    INDEX NO. 152098/2022
NYSCEF DOC. NO. 12    Case 1:24-cv-03142-UA    Document 1-3    Filed 04/24/24    Page 46 of 90    RECEIVED NYSCEF: 03/12/2022

174

Directors of Chengdu Ganide Technology Co., Ltd. ("Chengdu Ganide"), a PRC entity engaged in the planning and construction of a semiconductor fabrication plant (also known as a "foundry") in which monolithic microwave integrated circuits ("MMICs"), a type of integrated circuit device, would be manufactured. As admitted by LUO, Chen has conducted the affairs of the Enterprise, including but not limited to the illicit acquisition of blueprints and raw materials, used in the production of semiconductors, from U.S. and other foreign companies in the United States for end use in China, and, upon information and belief, the payment and management of other enterprise members, including Shih.

39.    Non-party culpable person Shih is a dual citizen of Taiwan and the United States and worked as an electrical engineer with expertise in all aspects of MMIC technology. Since at least 2010, Shih was employed and compensated by Chengdu GaStone Technology Co., Ltd. ("CGTC"), a PRC entity that had established a MMIC foundry in Chengdu, PRC, and which was designated in 2014 by the U.S. Department of Commerce as being a risk to U.S. national security or foreign policy interests. Together with Chen, Shih served on the Board of Directors of Chengdu Ganide since no later than 2010. Shih was financed by Chen – and as admitted by LUO, the Enterprise financed Chen, and upon information and belief, the Enterprise financed Shih via Chen – and thus Shih conducted the affairs of the Enterprise at the direction and oversight of defendants SUN and NATIONS USA and non-party Chen, and was tasked with, among other things, acquiring for the Enterprise the technical knowledge and designs necessary for the mass production of MMIC semiconductors in the PRC.

40.    The association-in-fact enterprise described herein functions much like a modern military unit: (i) strategic level command (including defendants LUO and SUN), who are responsible for preparing, planning, conducting, and executing Enterprise operations to achieve

14

FILED: NEW YORK COUNTY CLERK 03/02/2022 00:28 PM
NYSCEF DOC. NO. 12
INDEX NO. 152098/2022
RECEIVED NYSCEF: 03/12/2022

Case 1:24-cv-03142-UA Document 1-3 Filed 04/24/24 Page 47 of 90

175

the strategic objectives of the Enterprise; (ii) operational level units (including defendants YU, HUANG, NATIONS, and NATIONS USA), who must be prepared to plan, conduct, and sustain Enterprise operations; and (iii) component level units (including non-party culpable persons such as Chen, Shih, and others), who provide field level operational expertise and support to operational level units.

41. LUO and SUN, as strategic level command and masterminds of the Enterprise, are responsible for its overall direction and coordination, with final say on all important decisions of the Enterprise. In this capacity, LUO and SUN are responsible for Enterprise finances and would cause money to be collected and disseminated, by way of bank accounts controlled by the Enterprise, including bank accounts maintained at financial institutions located in New York County, to finance the activities of the Enterprise. LUO and SUN would cause Enterprise funds to be disseminated to various members of the Enterprise, including Chen and others, as compensation for their contributions to the illicit acquisition of U.S. technologies for end use in China. Together with SUN, LUO is also responsible for creating, approving, and implementing the policies, practices, and instrumentalities used by the Enterprise to accomplish its common goals and purposes. Together with HUANG, LUO and SUN are further responsible for the recruitment of talent to the Enterprise. Stated differently, at all times relevant herein, LUO and SUN were and have been the hub of the Enterprise as strategic level command, around which all other defendants and non-party culpable persons and entities revolve, and have combined into a single cohesive and self-sustaining unit with the common purpose and goal of illicitly acquiring and transferring U.S. and other foreign technologies in the United States for end use in China. The Enterprise strategically aggregated individuals and entities with different specialties and expertise to take on tasks no existing individual or entity was properly configured to tackle alone,

15

and provided overarching headquarters, management, funding, communications, and logistical capabilities and support.

42. SUN and YU are LUO's chief lieutenants, and are responsible for the day-to-day operations of the Enterprise, directing other members of the Enterprise to take actions necessary to accomplish Enterprise objectives, and implementing the policies, practices, and instrumentalities of the Enterprise. LUO would direct YU and SUN to orchestrate, plan, implement, and execute command level decisions, including which controlled commodities and technologies to acquire and the manner and means of acquiring and exporting the same for end use in China.

43. HUANG's role in the Enterprise, as directed by LUO and SUN, is primarily to identify and assist in the recruitment and solicitation of talent to the Enterprise, including, to wit, the solicitation of Plaintiffs, and to otherwise leverage his PRC relationships to facilitate the business and activities of the Enterprise and otherwise coerce Enterprise membership.

44. Chen is one of the longest-standing, most successful, and trusted associates of the Enterprise, and upon information and belief, Shih is financed and managed by Chen. Chen, Shih, and others are field operatives of the Enterprise and active participants and central persons in the operation and execution of Enterprise activities at all relevant times herein.

## II. RICO PREDICATE ACTS

### A. The Enterprise's Historical Predicate Acts

45. Defendants and other culpable members of the Enterprise committed deliberate and repeated acts of misappropriation and illicit procurement of protected commodities and technologies from locations in the United States and elsewhere, and each received income and other benefits and enriched themselves directly and indirectly from such efforts.

16

FILED: NEW YORK COUNTY CLERK 03/02/2022 00:28 PM
NYSCEF DOC. NO. 12
INDEX NO. 152098/2022
RECEIVED NYSCEF: 03/12/2022
Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 49 of 90
177

46.     As admitted by LUO, in or around 2011 – at the direction of LUO and SUN and utilizing capital funding and access provided by the Enterprise – the Enterprise facilitated the acquisition of a New York-based high technology company.  The acquisition facilitated the transfer of critical technology to the Enterprise and also established a domestic base for Enterprise operations in the State of New York.  Based on meetings and other Enterprise activities admitted by LUO to have occurred in the State of New York, this New York entity serves as strategic base for Enterprise activities and operations including a base from which to manage the Enterprise's technical experts.

47.     As set forth herein, LUO admitted to financing Chen in furtherance of Enterprise objectives, and upon information and belief, on or about June 1, 2011, the Enterprise, via funding provided by NATIONS and other non-party culpable Enterprise members, and facilitated by LUO and SUN, caused Chen to deposit approximately $3.4MM into a bank account held by a British Virgin Islands company and controlled by the Enterprise.  Upon information and belief, the $3.4MM was used to finance the Enterprise and compensate Shih and others for the illicit acquisition and unauthorized export of MMIC chips and designs to be fraudulently obtained by Shih and others from an American MMIC foundry.  Upon information and belief, on or about August 2011 – with the support of NATIONS USA in the supervision of Enterprise field operatives and at the ultimate authorization of LUO and SUN – Chen used the Enterprise funding to approve monthly payments of $67,000 to Shih as compensation for Shih's ongoing role in the Enterprise with respect to the planning and execution of illicit acquisitions of sensitive U.S. export-controlled technologies and related materials, such as MMICs.

48.     As set forth herein, LUO admitted to financing Chen in furtherance of Enterprise objectives, and upon information and belief, the $3.4MM ultimately distributed by Chen to Shih

17

and other Enterprise members provided them substantial Enterprise financing and a clear incentive to carry out field operations in furtherance of Enterprise objectives. Upon information and belief, Chen and Shih further used this Enterprise financing to continue their efforts in connection with Chengdu Ganide's plans to utilize and further develop the technologies illicitly acquired by the Enterprise, as well as CGTC's plans to utilize the illicitly obtained technology for specialization in, among other things, the design, testing, and manufacturing of gallium nitride and gallium arsenide MMIC wafers and chips for end use in China.

49.     Shih – upon information and belief, financed by the Enterprise via funding provided by NATIONS and other Enterprise members and under the management of NATIONS USA and Chen – committed a number of crimes in furtherance of Enterprise objectives, including, to wit: (i) in or around April 2012, under Chen's guidance, Shih planned for the development of a MMIC semiconductor foundry in the PRC, and in furtherance of this foundry, on or about September 24, 2012, Shih caused the unlawful export of semiconductor-related equipment from the United States to Chengdu, PRC in violation of, *inter alia*, the Export Administration Regulations, 15 C.F.R. §§ 730-744; (ii) from February 2013, Shih caused a subordinate field operative to provide false information to a leading American MMIC semiconductor foundry ("U.S. MMIC Foundry") for the purpose of illicitly inducing the sale of MMICs produced by U.S. MMIC Foundry to entities controlled by Shih in furtherance of Enterprise objectives and in violation of, *inter alia,* 18 U.S.C. § 1341; (iii) on or about September 3, 2013 through December 1, 2014, Shih caused the submission to U.S. MMIC Foundry of multiple purchase orders for MMIC wafers totaling $247,000, and – utilizing Enterprise money and at the ultimate authorization of LUO and SUN – caused payments to be made for said illicit purchases of MMIC chips fabricated by U.S. MMIC Foundry totaling

18

$247,000, along with payments to Shih's subordinate totaling $38,028, in furtherance of Enterprise objectives; and (iv) on or about January 2, 2014 through April 6, 2015, Shih caused packages containing the MMIC chips obtained from U.S. MMIC Foundry to be unlawfully shipped from the United States and ultimately delivered to the PRC in furtherance of Enterprise objectives.

### B. The Enterprise Scheme to Solicit, Coerce, and Defraud Plaintiffs

50.     To support the Enterprise, Defendants recruited, solicited, groomed, financed, and managed various business, finance, science, and technology professionals like DAI and Chen and others to illicitly access and acquire protected American technologies. Defendants sought to solicit, direct, and incentivize DAI and others to commit crimes against companies headquartered or with offices in the United States in furtherance of Enterprise objectives.

51.     To wit, upon information and belief, around the time the Enterprise was arranging for Shih to illicitly acquire and export MMIC chips, LUO and SUN recognized the Enterprise's need to use financial and investment professionals as field operatives to arrange for sophisticated transactions and directed HUANG to recruit and solicit suitable candidates whose responsibilities would be the management, laundering, and growth of Enterprise finances. One such candidate was plaintiff DAI, by then already a successful hedge fund manager in China. As recounted by LUO, the Enterprise ultimately "chose" to solicit and recruit DAI to the Enterprise for three reasons: first, LUO's long-standing, trusted associate HUANG had arranged their relationship; second, DAI shared an ancestral birthplace with LUO; and third, as admitted by LUO, "in the private fund field, [DAI had] strong professionalism, [was] well-educated, low-key, hardworking, pragmatic, and professional. [LUO] need[ed] to find someone like this" for the Enterprise.

19

FILED: NEW YORK COUNTY CLERK 03/02/2022 00:28 PM     INDEX NO. 152098/2022
NYSCEF DOC. NO. 12     Case 1.24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 52 of 90   RECEIVED NYSCEF: 03/12/2022

180

52.     In furtherance of the scheme to recruit and solicit Plaintiffs, HUANG arranged a

social engagement at the direction of LUO and SUN, in or around May 2014, to create the

opportunity for LUO and SUN to solicit DAI to the Enterprise.  Unaware of the criminality of

the Enterprise or the Individual Defendants association with same, at the behest of HUANG,

DAI accepted LUO's claimed interest in subscribing to a fund managed by Khan Funds China,

DAI's wholly-owned, registered private fund management company.

53.     On or around October 15, 2014, DAI incorporated plaintiff KHAN FUNDS in

New York County to serve as the global headquarters for DAI's businesses and the umbrella

parent company to all of DAI's wholly-owned affiliated entities located in China, Singapore, and

elsewhere, including Khan Funds China.

54.     In or about August 2015, plaintiff KHAN FUNDS formed a mergers and

acquisitions team to execute DAI's investment strategy of acquiring U.S.-based biopharma

companies and merging the same with similarly situated China-based companies in an effort to

grow enterprise value and total shareholder returns.  In furtherance of this investment strategy,

DAI concurrently established Beijing Khan as a wholly-owned subsidiary of Khan Funds China.

55.     Despite the biopharma sector being completely outside of NATIONS' ordinary

scope of business, LUO recognized this as a strategic opportunity to ensnare Plaintiffs into the

Enterprise, thereby allowing the Enterprise to use the financial strength and reputation of KHAN

FUNDS and DAI to facilitate Enterprise activities and launder illicit racketeering proceeds.  To

that end, from about October 2015 and continuing through no earlier than November 2017, in

New York County and elsewhere, Defendants, together with others, did knowingly and

intentionally conspire to devise a scheme and artifice to defraud Plaintiffs, and to obtain money

and property from Plaintiffs, by means of one or more materially false and fraudulent pretenses,

20

representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, contrary to 18 U.S.C. § 1343. Specifically, beginning from approximately October 2015 through no earlier than November of 2015, the Enterprise directed YU to cause NATIONS to commit to an investment in KHAN FUNDS' biopharma project, something that far exceeded NATIONS' ordinary course of business; in turn, NATIONS and YU caused the transmission of fraudulent communications to Plaintiffs in New York County and elsewhere concerning the negotiation of the purported investment. As a result of these negotiations, on or around November 23, 2015, Beijing Khan, as General Partner and Executive Partner, and non-party culpable entity Shenzhen Qianhai Nations Investment Management Co., Ltd. (hereinafter referred to as "Nations Investment"), a wholly-owned subsidiary of NATIONS, as Limited Partner, entered into the Shenzhen Guotai Qixing Industry Investment Fund Management Centre [Limited Partnership] Partnership Agreement (hereinafter referred to as the "Partnership Agreement"), establishing non-party Shenzhen Guotai Qixing Industry Investment Fund Management Centre [Limited Partnership] (hereinafter referred to as "Shenzhen Guotai" or the "Partnership"). The Enterprise caused Nations Investment to invest capital in the amount of RMB 300MM, on or around November 30, 2015, into the Partnership, with an additional investment of RMB 200MM to the Partnership, on or around July 4, 2016. By these investments, NATIONS committed approximately one quarter of its cash reserves at that time to Enterprise goals and objectives that were outside of NATIONS' ordinary scope of business.

56.     Pursuant to the terms of the Partnership Agreement, KHAN FUNDS, by and through affiliate entity Beijing Khan, as General Partner and Executive Partner, had the exclusive

21

FILED: NEW YORK COUNTY CLERK 03/02/2022 00:28 PM INDEX NO. 152098/2022
NYSCEF DOC. NO. 12   Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 54 of 90   RECEIVED NYSCEF: 03/12/2022

182

right and authority to make independent investment and management decisions for the Partnership, while NATIONS, via Nations Investment as Limited Partner, was expressly forbidden from participating in or interfering with such decisions. KHAN FUNDS' sole authority to make these decisions had been negotiated ad nauseam and was of such importance that this limiting clause was set forth in the Partnership Agreement in no less than ten different sections or subsections, to wit: sections 2.6.5 and 2.6.6, which bestowed upon KHAN FUNDS the right to "independently manage the daily operations of" and "make investment decisions independently for" the Partnership, respectively, while also stating that the Limited Partner "may not participate nor interfere;" sections 4.2.3 and 4.2.5, which noted that the Limited Partner shall not "participate in or interfere in the normal operation and management" or "be involved in the management," respectively, of the Partnership; section 5.1, which granted KHAN FUNDS the power to "execute the Partnership affairs on behalf of the Partnership;" section 5.3.2, which stated that "[a]dministering maintaining, and disposing of Partnership assets, including but not limited to investment assets, non-investment assets, intellectual property rights, etc." was one of the "[a]uthorit[ies] and responsibilities of the Executive Partner;" and the entirety of section 6, comprising sections 6.1, 6.2, 6.3, and 6.4, which authorized KHAN FUNDS to make decisions for the Partnership, specifically "exercis[ing] the investment decision-making authority;" "determin[ing] if the investment conditions of the projects are in line with the overall interest of the Partnership, and ultimately decid[ing] whether to invest;" "with regards to the transfer and disposition of the Partnership's investment assets, real estates held for various reasons, and intellectual property;" and "with regards to other investment related matters of the Partnership."

57.     NATIONS, via its affiliated entity Nations Investment, however, had no present or future intention of abiding by terms of the Partnership Agreement or the underlying intended

22

purpose of the Partnership, that is, investment into the U.S. biopharma sector. Rather, the Enterprise sought to leverage the investment for the fraudulent purpose of co-opting Plaintiffs into the Enterprise; the Enterprise's intermingling into DAI's businesses encumbered Plaintiffs with the legal obligation and responsibility to unwittingly manage racketeering funds of the Enterprise, and Defendants sought to exploit this obligation as a means to solicit and coerce Plaintiffs' involvement in the Enterprise. As described herein,   LUO, SUN, and others employed threats of violence against DAI's person, family, and associates, and issued threats of governmental and regulatory scrutiny against KHAN FUNDS in furtherance of the scheme to solicit and coerce Plaintiffs' involvement in the Enterprise.

58.     Between January through September of 2016, in furtherance of the business of the Partnership, KHAN FUNDS expended in excess of $1MM in consulting, legal, and other fees with respect to China Merchants Bank New York Branch, Deloitte, and Baker McKinsey, as well as countless hours and resources expended on extensive research, due diligence, meetings, and assessments on numerous acquisition candidates, eventually culminating in overseas roadshows in the PRC showcasing the target acquisitions.

59.     During this time, in or about March 2016, LUO telephoned DAI in the State of New York and summoned DAI to China to accompany him on a trip to New York for, among other things, assistance with a "personal favor" unrelated to Luo's position at NATIONS. Specifically, LUO sought DAI's assistance in establishing an account at a banking and financial institution in the United States for a British Virgin Islands private company controlled by the Enterprise. Unbeknownst to DAI, LUO sought to establish this bank account for the purposes of laundering illegal racketeering proceeds of the Enterprise and financing Enterprise activities. After arriving in New York County together with LUO on or around May 7, 2016, DAI arranged

23

for LUO to meet with China Merchants Bank New York Branch, for the purpose of establishing an account with a banking institution in the United States, specifically within the State of New York, County of New York, that would be used to launder the Enterprise's funds and finance the illicit acquisition and transfer of protected U.S. technologies for end use in China, as well as activities conducted in furtherance thereof. Between approximately May 7, 2016 through May 14, 2016, within New York County and elsewhere, Defendants, together with others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud China Merchants Bank New York Branch, a multi-national banking and financial services institution that operated in New York County and elsewhere, and to obtain moneys, funds, credits, and other property owned by and under the custody and control of said financial institution, by means of one or more materially false and fraudulent pretenses, representations, and promises, contrary to 18 U.S.C. § 1344, with the intent to promote the carrying on of specified unlawful activity, to wit: a conspiracy to violate the Economic Powers Act.

60.     During this trip to New York, LUO also visited the Enterprise's New York base, and later admitted that the Enterprise had "already acquired this team 4 or 5 years ago" by way of a "comrade-in-arms partner who [LUO] arranged in Beijing." Upon information and belief, LUO met with the Enterprise's field level operatives and others for the purpose of transferring illicitly-acquired, critical American process knowledge for the benefit of the Enterprise.

61.     In furtherance of the Enterprise's scheme to solicit, coerce, and defraud Plaintiffs, during this visit, LUO suggested that KHAN FUNDS change the investment focus of the Partnership from biopharma and use the funds invested by the Enterprise to instead acquire an American semiconductor company to advance the development of the high technology industries in the PRC. Given this suggestion was in direct contravention of the terms of Partnership

24

Agreement, the fact that there was no expertise within the KHAN FUNDS mergers and acquisitions team in connection with a high technology acquisition, and the fact that RMB 500MM could not fund a transaction of this type, Plaintiffs disregarded this suggestion and continued to proceed with the biopharma transaction as planned. To that end, Plaintiffs continued the efforts of identifying suitable biopharma candidates for acquisition and expended considerable resources in pursuit thereof. After conducting extensive due diligence, countless meetings and assessments, and travel with acquisition targets on various road shows, Plaintiffs finally identified an attractive biopharma candidate that had the potential to return significant profits to the Partnership. Despite this, the Enterprise's demand to switch the investment focus of the Partnership to a high technology enterprise only increased in frequency, urgency, and intensity. LUO and SUN directed YU to manage the communications between Plaintiffs and the Enterprise, and, to that end, YU directed repeated communications to Plaintiffs in New York County pressuring Plaintiffs to agree to Enterprise demands and threatened harsh consequences for the refusal thereof.

62. On or about September 12, 2016, LUO again traveled to New York. No later than September 20, 2016, LUO met with DAI in New York County, at which point DAI presented KHAN FUNDS' biopharma investment findings and recommendations to LUO. LUO again repeated the demand that Partnership funds be used to acquire an American high technology company and not the intended biopharma investment.

63. Following LUO's visit, LUO and SUN caused YU to initiate a pressure campaign against Plaintiffs. To that end, on or around September 26, 2016, Yu transmitted extortionate and fraudulent communications to Plaintiffs in New York threatening the immediate dissolution of the Partnership if Plaintiffs failed to submit to Enterprise demands. To that end, in or around

FILED: NEW YORK COUNTY CLERK 03/02/2022 00:28 PM
NYSEF DOC. NO. 12

INDEX NO. 152998/2022
RECEIVED NYSCEF: 03/12/2022

Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 58 of 90

186

May 2017, at NATIONS' headquarters in Shenzhen, PRC, LUO summoned and captured two of KHAN FUNDS' most senior employees. LUO, knowing that his message would be relayed to Plaintiffs in New York, angrily confronted these KHAN FUNDS employees and made direct threats demonstrating the reach and power of the Enterprise to inflict harmful consequences upon Plaintiffs for refusing Enterprise demands.

64.     On or around September 10, 2017, LUO traveled to New York for the purpose of finalizing and delivering Plaintiffs' membership to the Enterprise and securing Plaintiffs' agreement to facilitate the proposed acquisition by the Partnership. Further, LUO admitted that his visit's purpose was to attend various meetings the Enterprise arranged to be held at the Enterprise's New York base to bring together certain of the Enterprise's field operatives located in New York and overseas. Beginning on or around September 10, 2017 through September 17, 2017, DAI met with LUO on multiple occasions at multiple locations in New York County, including the offices of KHAN FUNDS. On or around September 10, 12, and 14, 2017, LUO admitted in multiple conversations with DAI that the primary reason for his visit to New York was to bring together members of the Enterprise's collected team of international technical experts to meet with their American counterparts at the Enterprise base in New York in furtherance of the Enterprise's scheme to illicitly acquire and transfer protected U.S. technologies for end use in China. As admitted by LUO, "[the Enterprise's New York team of experts] now has two or three of the world's top technology experts capable of competing with [the most advanced American companies in the industry]. The reason I came here this time is to communicate with them about technology. This technology can completely fill the domestic gap." LUO had "brought the core expert technical team [from China], and some experts will fly from Europe." LUO further revealed that the purpose of the Enterprise meeting was to

26

FILED: NEW YORK COUNTY CLERK 03/02/2022 00:28 PM
NYSCEF DOC. NO. 12

Case 1:24-cv-03142-UA Document 1-3 Filed 04/24/24 Page 59 of 90

INDEX NO. 152098/2022
RECEIVED NYSCEF: 03/12/2022

187

coordinate the activities of Enterprise members and cause them to commit crimes in furtherance
of Enterprise objectives, including the illicit acquisition of restricted technologies in violation of
the Economic Powers Act and crimes indictable under Title 18, United States Code, Sections
1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1831 (relating to
economic espionage), 1832 (relating to theft of trade secrets), and 1956 (relating to the
laundering of monetary instruments). To wit, LUO admitted, "[t]his time, my team came here to
coordinate with them and clearly communicate about all the core details, and some things have to
be brought back [to the PRC]," and that "[at this meeting], I will take action to do the second
most important thing [the Enterprise] planned. After I finish this matter, the thing I bring back
will help our country resolve many problems." In other words, the Enterprise was on the
precipice of obtaining illicitly acquired technologies that would significantly advance the goals
of the Enterprise and PRC technological capabilities, and on or around September 13, 2017,
LUO and other members of the Enterprise met at the Enterprise's New York base in furtherance
of these objectives.

65. In the course of these same conversations with DAI in New York, LUO admitted,
to wit: (i) LUO's role as a mastermind of the Enterprise and his leadership position with respect
to Enterprise members: "I asked them [other members of the Enterprise] to work here for several
days and communicate with them. They really respect me now … I directly lead them for this;"
(ii) the achievements of the Enterprise, claiming that "the top [technology] that we have
purchased, the [technology] has already been brought back to China, it has been figured out;"
(iii) that the semiconductor facility that NATIONS sought to establish in Chengdu, PRC was
built upon the Enterprise's illicit technology acquisitions; (iv) that the "Framework Agreement"
between NATIONS and CHEN, concerning the production and commercialization of

27

semiconductor IC wafers, was actually made possible by illicit Enterprise activity and the very technologies Chen had been dispatched to acquire for the Enterprise; (v) the Enterprise's financing of Chen's activities and Chen's essential role as a field operative for the Enterprise, as "there are many things [Chen had done for the Enterprise] that cannot be told," and that "[i]n these ten years or so, including from Canada and from the U.S. … the things [Chen] was responsible for, how the researchers came back to the country, and how the technology was brought back, how can I talk about these things? It's not that easy." LUO continued, "Chen had been working for [the Enterprise] for 15 years," and the Enterprise "relied on Chen" because Chen was instrumental in advancing PRC technologies, starting from "no drawings, no technology, no talent" to having obtained for the Enterprise "a full set of drawings and talents." As admitted by LUO, Chen and others acted in furtherance of Enterprise objectives in the theft of restricted commodities and technologies and the misappropriation of critical intellectual capital; (vi) that LUO's work for the Enterprise was wholly unrelated to his public-facing position at NATIONS and that he neither worked for any one single person or entity nor was he accountable to any one single person or entity; rather, LUO worked to advance the Enterprise goal of the development of PRC technology; (vii) the extensive global reach of the Enterprise and its operation; as admitted by LUO, "[t]he people on my team, throughout the world, there are 1,500 people in the U.S who can operate this (technology), several hundred in Canada and several hundred in Germany, and for these people, I have already… These people (technical experts) have already returned."  LUO continued, of the 1,700 U.S.-based engineers with expertise in producing gallium nitride and gallium carbide, there were "107 Chinese-Americans, all of whom are under my control;" and (vii) the expansive interest of the Enterprise in acquiring varied forms of technology, from the Enterprise's efforts in the fields of artificial intelligence and

its applications to predictive decision making to various supercomputer technologies.

66.    At the same time LUO was admitting to the workings of the Enterprise, in New York County, Defendants knowingly and with the intent to solicit, coerce, and defraud Plaintiffs, devised, participated in, and executed a scheme to solicit Plaintiffs' membership and participation in the Enterprise, defraud Plaintiffs as to material matters, and to use threats of force to compel Plaintiffs to commit multiple crimes in furtherance of the Enterprise, including the illicit acquisition of restricted technologies in violation of the Economic Powers Act and crimes indictable under Title 18, United States Code, Sections 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1831 (relating to economic espionage), 1832 (relating to theft of trade secrets), and 1956 (relating to the laundering of monetary instruments). To wit, on or around September 10, 12, and 14, 2017, LUO admitted to his intention of soliciting Plaintiffs to the Enterprise for the purposes of giving the Enterprise access to capital that could be readily sourced and thus allow the Enterprise to finance operations through legitimate channels. LUO explained that he had "kept a special path for" Plaintiffs to orchestrate and manage the Enterprise's finances, and "hope[d] that everyone can work together in the funding strategy aspect." LUO activated his pressure campaign to solicit Plaintiffs' membership to the Enterprise with promises of profit, access, and influence: "[b]y helping [the Enterprise] with your intelligence, you can both receive such profits and at the same time, help me personally, also, through such circumstances you're able to make friends with these people [Enterprise members and other influential people]. This is a special channel to develop …" Luo continued, "this cooperation will bring you key influence" and this "collaborative relationship with Khan Funds [and the Enterprise]" would be "extraordinary." In sum, Luo admitted that the Enterprise never intended to invest in a biopharma acquisition via the Partnership; rather, the Enterprise had

29

always sought to leverage its investment in the Partnership to solicit and coerce Plaintiffs'
membership in the Enterprise and exploit Plaintiffs in the scheme to covertly acquire an
American semiconductor company and transfer protected American technologies for end use in
China.

67.     At the same time LUO sought to solicit and coerce Plaintiffs to the Enterprise, in
New York County, Defendants devised, participated in, and executed a scheme to extort
RMB 300,000,000 from Plaintiffs in violation of 18 U.S.C. § 1951 and New York Penal Law
§ 155.05(2)(e) by use of threats of force, violence, and fear in an effort to use Plaintiffs to
launder the racketeering proceeds of the Enterprise and finance members of the Enterprise in
furtherance of Enterprise objectives.  To wit, on or around September 10, 12, and 14, 2017, LUO
repeatedly attempted to extort RMB 300,000,000 from Plaintiffs and demanded that the money
be used to finance Enterprise activities, ordering DAI in one instance, for example, to "[j]ust
follow the arrangements on your end.  I will give half of the 300 million [RMB] to someone
else." LUO continued, "I need to use the money to complete my mission [of the technological
development of the PRC]" and instructed DAI to "give me what you ought to give, and follow
your arrangement."  LUO proposed, among other things, that the illicit proceeds obtained
through the Enterprise's extortionate demand be laundered through the Enterprise's China
Merchants Bank New York Branch account located in New York County.

68.     LUO resorted to naked threats of violence and reminded DAI of the reach and
power of the Enterprise, and warned, to wit, of DAI's family members in China and the
Enterprise's close ties to Chinese authorities to disrupt KHAN FUNDS business.  The force of
LUO's myriad threats is perhaps best exemplified by LUO cornering and blockading DAI in his
hotel room at the Ritz Carlton in Lower Manhattan in September 2017 and demanding that DAI

30

kneel down and grovel as a demonstration of LUO's authority. This humiliating and violent act of degradation left DAI trapped and fearful for his personal safety until the time LUO ultimately allowed for his release.

## III.    THE OBSTRUCTION AND RETALIATION SCHEME AND OTHER HARM

### A.    Plaintiffs Report of the Enterprise to Law Enforcement

69.    Following DAI's meetings with LUO in New York County on or around September 10, 12, and 14 2017, DAI made immediate arrangements to report LUO and the Enterprise to the FBI on or about September 21, 2017, for violations of, to wit, the Economic Powers Act and crimes indictable under Title 18, United States Code, Sections 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1831 (relating to economic espionage), 1832 (relating to theft of trade secrets), 1956 (relating to the laundering of monetary instruments), 2314 (relating to the transportation in foreign commerce any commodities and technologies converted or taken by fraud), and 1951 (relating to extortion), and New York Penal Law § 155.05(2)(e).

70.    On account of initiating the FBI investigation of the Enterprise, DAI knew and understood the threat and reach of the Enterprise and caused KHAN FUNDS to dissolve its affiliated entities in the PRC, in the process liquidating more than one dozen private equity funds that managed in excess of $1BN in capital. Further to these efforts, DAI expended in excess of RMB 10MM to fulfill obligations triggered as a result of dissolution, including compensation to former clients and employees, as well as penalties and damages for contractual breaches.

71.    Being unaware of the FBI investigation initiated against them, between September 2017 through November 2017, YU, at the direction of LUO and SUN, caused the transmission of repeated communications by wire to Plaintiffs in New York, in furtherance of the Enterprise's

scheme to extort RMB 300MM from Plaintiffs and solicit and coerce Plaintiffs' membership to the Enterprise.

72.    On or about January 19, 2018, federal authorities arrested Shih in connection with his illicit acquisition and export of export-controlled U.S. technologies, and on October 18, 2018 – or approximately one year into the DOJ investigation initiated by Plaintiffs – Chen, Shih, and others were indicted in the United States District Court for the Central District of California in the Shih Matter. Chen was indicted as a co-conspirator in an alleged conspiracy to violate the IEEPA in connection with the illicit procurement of commodities and technologies for unauthorized end use in China, and as alleged herein, LUO admitted to financing Chen, and upon information and belief, Chen caused substantial amounts of Enterprise money to be deposited to an offshore bank account and directed these funds to be distributed to Shih and other members of the Enterprise. In or about July 2019, Shih was convicted of conspiracy to violate the IEEPA and the Export Administration Regulations, as well as various other crimes related to and in furtherance of this illegitimate activity. Upon information and belief, Chen remains a fugitive from justice as of the date of this Complaint and has remained in the PRC since the date of his indictment.

**B.    Defendants Obstruction and Retaliation Scheme and Other Harm**

73.    Beginning on a date unknown but no later than November 2017, Defendants, together with others, did knowingly, intentionally, and corruptly conspire to inflict harm upon DAI using the tactic of criminalizing DAI and forcibly repatriating him to the PRC. The forced repatriation of targeted overseas Chinese nationals – including those who are residents or citizens of other countries – is prevalent worldwide, including in the United States. Typically, an overseas target is intimidated through a variety of oppressive tactics aimed at forcing a target's

32

return to China, and the use of "soft" tactics and other forms of "persuasion" – tactics that

facially do not constitute kidnapping but nonetheless have the same purpose and effect – is

encouraged to avoid potential diplomatic disputes and "the complicated legal procedures and

long judicial cooperation procedures of the countr[y] where the [target is] hid[ing]." In

furtherance of Defendants' scheme to inflict harm upon DAI, Defendants adopted the telltale

tactics of a forced repatriation scheme, by supplying to PRC law enforcement false information

that DAI had committed various acts of criminal wrongdoing as a means to cause the issuance,

and thereafter the global broadcast, of an arrest warrant for DAI in the PRC. Apart from the

mental anguish caused to DAI and the threat of being jailed in the PRC, the global broadcast and

criminalization of DAI had the effect of restricting DAI's physical movements, as DAI would be

prevented from worldwide travel to any of the countries who honored PRC extradition requests,

not to mention the countless other jurisdictions where the Enterprise and PRC spheres of

influence respectively extended. Thus, the foregoing scheme had the effect of disabling DAI

from running KHAN FUNDS' worldwide businesses and restricted DAI's ability to serve as the

primary executive and global figurehead of KHAN FUNDS.

74.     In reliance on the false information provided by Defendants in criminalizing DAI

in furtherance of Defendants' scheme, the PRC police bureau in Shenzhen initiated criminal

proceedings against DAI and other KHAN FUNDS employees and subsequently issued warrants

of arrest for DAI and other KHAN FUNDS employees. The consummation of the scheme and

the eventual issuance and global broadcast of arrest warrants for DAI and other KHAN FUNDS

employees in the PRC was carried out without excuse or justification and with disinterested

malevolence to harm DAI. As a result of the foregoing, DAI expended, to wit, remediation costs

in the form of legal fees in excess of $200,000 and continuing to accrue to cause the revocation

33

of the issued arrest warrant, and fees excess of $40,000 for psychiatric treatment. Further to this effort, and adopting the continued tactics employed of criminalizing DAI and forcibly repatriating him to the PRC, at the direction of SUN, and, upon information and belief, via financing provided by NATIONS USA, beginning from a date unknown, but no later than November 2020 through no earlier than September 2021 and continuing to the date of this Complaint, Defendants, together with others, caused no less than three individuals to carry out multiple instances of surveillance against DAI and his properties in the State of New York and caused the collection of certain photo and/or video evidence on various dates during this period. Defendants did knowingly and willfully conspire to engage in conduct that caused, attempted to cause, and reasonably expected to cause substantial emotional distress and harm to DAI in the campaign to surveil DAI without excuse or justification, and Defendants participated in the stalking of DAI by directing surveillance activities and the recruitment of others into the conspiracy. As a result of the foregoing, DAI expended, to wit, remediation costs in the form of security personnel fees in excess of $118,000 and continuing to accrue to protect his person and properties.

75.    Shih's arrest in January 2018, and Chen's indictment in October 2018, alerted the Enterprise to DAI's cooperation with law enforcement. In retaliation thereof, at the direction of SUN, starting no later than January 2018 and continuing through no earlier than on or around July 9, 2021, Defendants, together with others, knowingly, intentionally, and corruptly conspired to obstruct, influence and impede, hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission of a Federal offense, and intentionally and knowingly retaliated against an informant for providing to a law enforcement officer of the United States any truthful information relating to the commission or

34

possible commission of any Federal offense, in violation of, to wit, 18 U.S.C. §§ 1512 and 1513. Defendants engaged in a pattern of obstruction and retaliation by knowingly promulgating false and defamatory information – including false claims that Plaintiffs had disappeared and had embezzled and absconded with millions of dollars – in the form of public announcements, as well as causing the worldwide syndicated publication of false and defamatory content delivered to New York in an effort to deflect and distract attention from law enforcement in violation of 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant) and 18 USC § 1513 (relating to retaliating against a witness, victim, or an informant). By attempting to impede the criminal investigation of the Enterprise, Defendants sought to avoid criminal prosecution for the illicit acquisition of protected commodities and technologies and sought to retaliate against Plaintiffs for their cooperation with law enforcement.

76.     Further to Defendants' obstruction and retaliation efforts, at the time of Shih's arrest, Plaintiffs discovered that the corporate offices of a KHAN FUNDS affiliated entity in Singapore had been burglarized and the office door lock changed without authorization. Upon information and belief, this illegal activity was directed by SUN and carried out by the Enterprise to discourage Plaintiffs from cooperating with law enforcement. Further, on or around December 6, 2018, or shortly following Chen's indictment in the Shih Matter, Plaintiffs discovered that KHAN FUNDS' email system had been accessed without authorization and compromised to expose certain confidential and proprietary information in violation of 18 U.S.C. § 1030. Upon information and belief, this unlawful cyberattack on KHAN FUNDS' computer systems was arranged by SUN to be carried out on American soil owing to the fact that all of KHAN FUNDS' computers and computer networks accessed were physically located in New York County and the State of New York, and was executed in furtherance of the Enterprise's

scheme to retaliate against Plaintiffs for their cooperation with law enforcement.

### C. Defendants Extortionate and Retaliatory Scheme

77. At the direction of SUN, and in furtherance of the Enterprise's scheme to retaliate and deter Plaintiffs from cooperating with law enforcement and defraud Plaintiffs, beginning from a date unknown but no later than on or about May 2, 2018, Defendants, together with others, did knowingly, intentionally, and corruptly conspire to commence a baseless and corrupt lawsuit intended to extort Plaintiffs in violation of, to wit, 18 U.S.C. § 1951 and New York Penal Law § 155.05(2)(e), and obstruct, influence and impede, hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission of a Federal offense, and intentionally and knowingly retaliated against an informant for providing to a law enforcement officer of the United States any truthful information relating to the commission or possible commission of any Federal offense, in violation of, to wit, 18 U.S.C. §§ 1512 and 1513. First, Defendants caused the covert filing of corrupt and fraudulent lawsuit initiated by wrongful means in the PRC to remove the KHAN FUNDS related entity as the General Partner and Executive Partner of the Partnership. By fraudulently concealing the location of the actual entities and individuals controlling the Partnership from, and providing fraudulent information to, the court – —and thus leveraging the corrupt connections between the Enterprise and the Chinese judiciary branch, the very type of government access LUO threatened that the Enterprise could activate against KHAN FUNDS – Defendants, through fraudulent and corrupt means, obtained an unlawful and defective judgment of default on or around February 14, 2019 enabling the Enterprise to wrongfully appoint an affiliated entity of NATIONS to the Partnership as General Partner and Executive Partner.

78. In furtherance of Defendants' retaliatory and extortionate scheme, on or around

36

October 27, 2020, NATIONS took advantage of its ill-gotten position in the Partnership to cause

the filing of more spurious litigation against DAI individually, together with other KHAN

FUNDS employees, in Singapore (the "Singapore Action"). At the direction of SUN and others,

the Singapore Action employed a similar strategy and playbook to the spurious litigation in

China: fraudulently conceal the actual location of DAI and others from the court in an effort to

fraudulently obtain a default judgment against DAI, in the millions, in contravention of New

York law.

79.    In sum, DAI's cooperation with the DOJ has extended over a number of years and

contributed to the indictments of certain members of the Enterprise as stated herein, and it is

incontrovertible that these individuals along with other members of the Enterprise have

committed a number of serious crimes against U.S. interests and continue to conspire against

DAI in retaliation for his cooperation with law enforcement. Accordingly, Defendants and other

members of the Enterprise must answer to Plaintiffs for their actions.

## IV.    DAMAGES

80.    As a direct result of the racketeering activity alleged above, as well as the conduct

of the other participants in the RICO enterprise, Plaintiffs have been injured in their business and

property as follows: (i) Defendants made intentional material misrepresentations of fact and

omissions in entering into the Partnership Agreement with the KHAN FUNDS affiliated entity

Khan Funds China. Among other things, Defendants misrepresented that they intended to abide

by the Partnership Agreement, including, to wit, § 2.6.5 (allowing KHAN FUNDS to manage the

affairs of the Partnership without participation or interference), § 2.6.6 (allowing KHAN FUNDS

to independently make investment decisions for the Partnership without participation or

interference), and § 6.1 of the Partnership Agreement (providing KHAN FUNDS investment

37

decision-making authority for the Partnership). KHAN FUNDS relied on Defendants false and misleading representations to its detriment, including by entering into the Partnership Agreement with NATIONS, and Defendants knew that the representations and omissions were false and misleading and made with the intent and expectation that KHAN FUNDS would rely on them. KHAN FUNDS has suffered injury as a direct and proximate result of Defendants false and misleading representations and omissions, including but not limited to monetary damage in excess of $1MM relating to money expended on consulting and research services, extensive due diligence costs and legal fees expended in connection with the investigation of potential target acquisitions, and extensive travel, operational, and related overhead costs expended in connection with facilitating the proposed transactions; (ii) in or around October 2017, resulting from the initiation of the DOJ investigation of the Enterprise and DAI's inability to return to China on account of the threats issued by the Enterprise, KHAN FUNDS was forced to dissolve affiliated entities Khan Funds China and liquidate all fourteen hedge funds under KHAN FUNDS' management. KHAN FUNDS has suffered injury as a direct and proximate result of Defendants' conduct, including but not limited to monetary damage in excess of $150MM in management fees and related profits arising from the liquidation of the fourteen hedge funds and closure of affiliated entities and RMB 10MM to fulfill obligations triggered as a result of dissolution, including compensation to former clients and employees, as well as penalties and damages for contractual breaches; (iii) in or around March 2018, KHAN FUNDS was denied custodian services by First Republic Bank for KHAN FUNDS' planned U.S.-based hedge fund offerings, citing the false and derogatory information promulgated by Defendants in violation of 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant) and 18 U.S.C. § 1513 (relating to retaliating against a witness, victim, or an informant). KHAN FUNDS has

suffered injury as a direct and proximate result of Defendants' conduct, including but not limited to monetary damage in the form of lost management fees and related fund profits, and being forced to incur the overhead and operating expenses of KHAN FUNDS without the benefit of a U.S.-based hedge fund offering. The monetary damage incurred by KHAN FUNDS relating to its inability to commence its planned U.S.-based hedge fund offerings is in excess of $50MM and is continuing, including but not limited to with monthly overhead and operating expenses of KHAN FUNDS in excess of $200,000 and continuing to accrue through the date of this Complaint; (iv) KHAN FUNDS has lost its goodwill and business reputation in the United States and elsewhere owing to the false and derogatory information promulgated by Defendants in violation of 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant) and 18 U.S.C. § 1513 (relating to retaliating against a witness, victim, or an informant), resulting in loss of business opportunities; (v) DAI has spent and continues to spend significant amounts of money to defend the corrupt and fraudulent legal proceedings instituted by Defendants in the Singapore Action in an attempt of the Enterprise to extort and retaliate against Plaintiffs in violation of 18 U.S.C. § 1951 and the federal mail and wire fraud statutes. DAI has suffered injury as a direct and proximate result of Defendants' conduct, including but not limited to monetary damage in the amount of nearly $1MM in legal fees expended in connection with the forced defense of the corrupt and fraudulent Singapore Action and continuing to accrue through the date of this Complaint.

81.    As a direct result of the racketeering activity and other unlawful activity as alleged above, DAI has been injured as follows: (i) KHAN FUNDS and its affiliated entities are closely associated and identified in the public's mind with DAI as its founder and lead executive, and the false and derogatory information promulgated by Defendants concerning DAI in violation of

39

18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant) and 18 U.S.C. § 1513 (relating to retaliating against a witness, victim, or an informant) have damaged DAI, KHAN FUNDS, and its related entities through the loss of goodwill and irreparable harm to DAI's business reputation, resulting in loss of business opportunities; (ii) as stated herein, Defendants' scheme to inflict harm upon DAI caused DAI to expend, to wit, legal fees to cause the revocation of the issued arrest warrant against him in excess of $200,000 and continuing to accrue, and remediation costs in the form of security personnel fees in excess of $118,000 and continuing to accrue to protect DAI's person and properties, and legal fees to protect against the extradition of DAI and KHAN FUNDS' employees in excess of $1MM and continuing to accrue; and (iii) in or around October 2018, resulting from Defendants' actions and harm issued against DAI, DAI was diagnosed with Major Depressive Disorder and prescribed a regimen of antidepressant medication and expended in excess of $40,000 for psychiatric treatment, and has further suffered from other consequential physical infirmities resulting from the foregoing. The aforementioned psychological deficits and physical infirmities have caused significant impairment to DAI's cognitive abilities in connection with his profession and impaired and obstructed his ability to function at the same professional standards achieved prior to sustaining the suffered injuries. Accordingly, DAI has suffered injury as a direct and proximate result of Defendants' conduct in an amount to be determined at trial, and taken together with the aforementioned damages and all damages sustained by KHAN FUNDS, no less than $260MM and continuing to accrue as stated herein.

## CAUSES OF ACTION

### COUNT I
### RICO (18 U.S.C. § 1962(C))

82.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

83.     Defendants are all "persons" within the meaning of 18 U.S.C. § 1961(3). At all times relevant, Defendants conducted the affairs of an association-in-fact enterprise, as that term is used in 18 U.S.C. § 1961(4), compromised of themselves and additional entities and individuals known and unknown through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

84.     As described above, from a date unknown, but no later than in or around June 2011 and continuing through the date of this Complaint, the members of the Enterprise worked together to further their mutual goals of illicitly procuring protected technologies for end use in China.

85.     As described above, each of the Defendants participated in the creation, operation, or management of the Enterprise, and each received income or other benefits and enriched themselves directly and indirectly from such efforts.

86.     As described above, the Enterprise operated within the States of New York and California and elsewhere, including overseas.

87.     As described above, the Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

88.     As described above, the Enterprise had an ongoing organizational framework for carrying out its objectives. The Enterprise has organized itself into a cohesive group with specific and assigned responsibilities and a command structure to operate as a unit in order to

41

accomplish the common goals and purposes of illicitly procuring protected commodities and technologies for end use in China.

89. As described above, Defendants and several of their associates share long-standing personal, professional, and financial ties, and these pre-existing affiliations and common ties facilitated the ability of Defendants to combine, merge, and conspire with themselves and others to form their racketeering enterprise with the common purpose of illicitly procuring protected technologies for end use in China.

90. By and through each of the defendants' business, personal, and financial relationships with one another and their coordination with one another in the affairs of the Enterprise, each defendant knew the nature of the Enterprise and each defendant knew that the Enterprise extended beyond each defendant's individual role.

91. As described above, each defendant agreed to facilitate, conduct, and participate in the conduct, management, or operation of the Enterprise's affairs in order to illicitly acquire and export protected technologies and commodities in violation of 18 U.S.C. § 1962(c).

92. As described above, SUN and LUO are the masterminds of the Enterprise. In their capacity as the masterminds of the Enterprise, SUN and LUO had final authority on all significant business decisions of the Enterprise, and together with YU and others, are responsible for creating, approving, and implementing the policies, practices, and instrumentalities used by the Enterprise to accomplish its common goals and purposes. Together with YU, SUN and LUO are responsible for the day-to-day operations of the Enterprise. SUN and LUO have also taken actions and directed other members of the Enterprise, including HUANG, to take actions necessary to accomplish the overall goals and purposes of the Enterprise, including directing the affairs of the Enterprise, funding the Enterprise, soliciting and recruiting members of the

42

Enterprise, and directing members of the Enterprise.

93. As described above, NATIONS and NATIONS USA have been active participants and central persons in the operation and management of the Enterprise and its affairs, and in the orchestration, perpetration, and execution of the Enterprise's scheme to illicitly procure protected technologies and commodities for end use in China.

94. As described above, HUANG associated with the Enterprise and participated in the conduct of its affairs, including HUANG's intentional solicitation and encouragement of Plaintiffs to become members of the Enterprise and inducement of Plaintiffs to commit crimes in furtherance of Enterprise objectives.

95. As described above, each defendant conducted and/or participated in the affairs of the Enterprise through a pattern of racketeering activity, including the illicit acquisition of restricted technologies in violation of the Economic Powers Act and crimes indictable under Title 18, United States Code, Sections 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1831 (relating to economic espionage), 1832 (relating to theft of trade secrets), 1956 (relating to the laundering of monetary instruments), 2314 (relating to the transportation in foreign commerce any commodities and technologies converted or taken by fraud), and 1951 (relating to extortion) and New York Penal Law § 155.05(2)(e).

96. As described above, beginning on a date unknown but no later than in or around May 2014 through no earlier than in or around November 2017, in New York County and elsewhere, Defendants, together with others, knowingly and with the intent to solicit, recruit, and defraud Plaintiffs, devised, participated in, and executed a scheme to solicit Plaintiffs' membership and participation in the Enterprise, defraud Plaintiffs as to material matters, and to use threats of force to compel Plaintiffs to commit multiple crimes in furtherance of the

43

Enterprise, including the illicit acquisition of restricted technologies in violation of the Economic Powers Act and crimes indictable under Title 18, United States Code, Sections 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1831 (relating to economic espionage), 1832 (relating to theft of trade secrets), and 1956 (relating to the laundering of monetary instruments). Defendants and others further devised, participated in, and executed a scheme to extort RMB 300MM from Plaintiffs in violation of 18 U.S.C. § 1951 and New York Penal Law § 155.05(2)(e) by use of threats of force, violence, and fear in an effort to use Plaintiffs to launder the racketeering proceeds of the Enterprise and finance members of the Enterprise in furtherance of Enterprise objectives.

97. To wit, as described above, from no later than in or around November 23, 2015 and continuing no earlier than November 2017, in New York County and elsewhere, Defendants, together with others, did knowingly and intentionally devise a scheme and artifice to defraud Plaintiffs, and to obtain money and property from Plaintiffs, by means of one or more materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, contrary to 18 U.S.C. § 1343 and 18 U.S.C. § 1951.

98. To wit, as described above, no later than in or around September 2017 and continuing through no earlier than November 2017, in New York County and elsewhere, Defendants knowingly aided, abetted, counseled, commanded, induced, solicited, and procured another person to transport, transmit, and transfer a monetary instrument and funds, that is, RMB 300MM, to a place in the United States, within New York County, specifically, a China Merchants Bank New York Branch account, with the intent to promote the carrying on of

44

specified unlawful activity in violation of 18 U.S.C. § 1956.

99.    To wit, as described above, no later than in or around September 2017 and continuing through no earlier than November 2017, in New York County and elsewhere, Defendants, together with others, did knowingly and intentionally attempted to transport, transmit, and transfer monetary instruments and funds, to wit: wire transfers, from one or more places in the United States to and through one or more places outside the United States and to one or more places in the United States from and through one or more places outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit: conspiracy to violate the Economic Powers Act, all contrary to 18 U.S.C. § 1956.

100.    As described above, from January 2018 and continuing through July 9, 2021, at the direction of SUN, each defendant together with others, did knowingly, intentionally, and corruptly attempted to obstruct, influence and impede, hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission of a Federal offense, and intentionally and knowingly retaliated against an informant for providing to a law enforcement officer of the United States any truthful information relating to the commission or possible commission of any Federal offense, in violation of, to wit, 18 U.S.C. §§ 1512 and 1513.

101.    As described above, from on or about May 2018 and continuing through the present, at the direction of SUN, Defendants, together with others, knowingly, intentionally and corruptly commenced a corrupt lawsuit intended to extort Plaintiffs in violation of, to wit, 18 U.S.C. § 1951 and New York Penal Law § 155.05(2)(e), and obstruct, influence, and impede, hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission of a Federal offense, and intentionally and knowingly

45

retaliated against an informant for providing to a law enforcement officer of the United States any truthful information relating to the commission or possible commission of any Federal offense, in violation of, to wit, 18 U.S.C. §§ 1512 and 1513.

102.    As described above, each defendant received income and other benefits and enriched themselves directly and indirectly from the pattern of racketeering alleged herein.

103.    As described above, Plaintiffs have been and continue to be injured in their business and property by Defendants' violation of 18 U.S.C. § 1962(c). All of Plaintiffs' injuries occurred within the United States.

**COUNT II**
**RICO CONSPIRACY (18 U.S.C. § 1962(D))**

104.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

105.    As described above, from a date unknown, but no later than in or around June 2011 and continuing through the date of this Complaint, within New York County and elsewhere, Defendants, together with others, knowingly and intentionally conspired and agreed with each other to illicitly acquire and export protected commodities and technologies from the United States to the PRC for unauthorized end use in China.    The manner and means of the aforementioned conspiracy include the preceding allegations, which are realleged and incorporated by referenced as though set forth fully herein.

106.    As described above, Defendants and others agreed to develop the high technology industries in the PRC, including the high-powered integrated circuit industry and the establishment of a foundry in the PRC in which MMICs would be manufactured.

107.    As described above, by and through each of the defendant's business, personal, and financial relationships with one another and their coordination with one another in the affairs

46

of the Enterprise, each defendant knew the nature of the Enterprise and each defendant knew that the Enterprise extended beyond each defendant's individual role. Moreover, through the same connections and coordination, each defendant knew that the other defendants were engaged in the conspiracies described herein.

108.    As described above, each defendant was a knowing, willing, and active participant in the Enterprise and its affairs, and each of the defendants shared a common purpose, namely, the orchestration, planning, preparation, and execution of the scheme to solicit, defraud, and harm Plaintiffs economically and otherwise. The participation and agreement of each defendant was necessary to allow the commission of this scheme.

109.    As described above, Defendants, together with others, conspired with each other to violate 18 U.S.C. § 1962(c). Defendants knowingly agreed, combined, and conspired to conduct or participate in the affairs of the association-in-fact Enterprise and each defendant agreed that the operation would involve repeated violations of the Economic Powers Act and crimes indictable under Title 18, United States Code, Sections 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1831 (relating to economic espionage), 1832 (relating to theft of trade secrets), 1956 (relating to the laundering of monetary instruments), 2314 (relating to the transportation in foreign commerce any commodities and technologies converted or taken by fraud), and 1951 (relating to extortion) and New York Penal Law § 155.05(2)(e).

110.    As described above, Defendants, together with others, conspired with each other to violate 18 U.S.C. § 1962(a). Defendants knowingly agreed, combined, and conspired to use or invest the proceeds of racketeering activity, to wit, income derived from crimes indictable under 18 U.S.C. § 1951 (relating to extortion) and New York Penal Law § 155.05(2)(e), in the operation of a RICO enterprise, an enterprise that engaged in, and the activities of which

47

affected, interstate and foreign commerce.

111.    As described above, from January 2018 and continuing through July 9, 2021, Defendants, together with others, conspired with each other to violate 18 U.S.C. § 1962(c). Defendants knowingly agreed, combined, and conspired to obstruct, influence and impede, hinder, delay, and prevent Plaintiffs from providing information to the FBI and intentionally retaliated against Plaintiffs for providing information to the FBI in violation of, to wit, 18 U.S.C. §§ 1512 and 1513.

112.    As described above, from on or about May 2018 and continuing through the present, Defendants, together with others, conspired with each other to violate 18 U.S.C. § 1962(c).    Defendants knowingly agreed, combined, and conspired to commence a corrupt lawsuit intended to extort Plaintiffs in violation of, to wit, 18 U.S.C. § 1951 and New York Penal Law § 155.05(2)(e), and obstruct, influence and impede, hinder, delay, and prevent Plaintiffs from providing information to the FBI and intentionally retaliated against Plaintiffs for providing information to the FBI in violation of, to wit, 18 U.S.C. §§ 1512 and 1513.

113.    As described above, Plaintiffs have been and continue to be injured in their business and property by Defendants' violation of 18 U.S.C. § 1962(d).  All of Plaintiffs' injuries occurred within the United States.

## COUNT III
## FRAUD

114.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

115.    As described above, among other things, Defendants made intentional material misrepresentations of fact and omissions in entering into the Partnership Agreement, including, to wit, § 2.6.5 (allowing KHAN FUNDS to manage the affairs of the Partnership without

participation or interference), § 2.6.6 (allowing KHAN FUNDS to independently make investment decisions for the Partnership without participation or interference), and § 6.1 of the Partnership Agreement (providing KHAN FUNDS investment decision-making authority for the Partnership).

116. At the time Defendants knowingly made and caused the above-described material false and fraudulent pretenses, representations, and promises, and concealed and omitted, and caused to be concealed and omitted, material facts as set forth above, Defendants knew that the material pretenses, representations, and promises were false, that material information was concealed and omitted, and that their facts and omissions were fraudulent and deceptive.

117. KHAN FUNDS relied on Defendants' false and misleading representations to its detriment, including entering into the Partnership Agreement with NATIONS.

118. Defendants knew that the representations and omissions were false and misleading and made with the intent and expectation that KHAN FUNDS would rely on them.

119. KHAN FUNDS reasonably relied on Defendants' misrepresentations and omissions, without which KHAN FUNDS would not have agreed to enter into the Partnership Agreement.

120. As described above, the above-described false and fraudulent pretenses, representations, and promises, and concealment and omissions made by and caused by Defendants were material because if Plaintiffs had known that the Enterprise had sought to solicit their involvement in the illicit procurement of protected commodities and technologies for end use in China and other crimes as described herein, they would not have entered into the Partnership Agreement or expended money on consulting and research services, due diligence costs and legal fees, and extensive travel, operational, and related overhead costs in connection

49

with the biopharma acquisition.

121. As described above, KHAN FUNDS has suffered injury as a direct and proximate result of Defendants' false and misleading representations and omissions, including but not limited to monetary damage in excess of $1MM relating to money expended on consulting and research services, extensive due diligence costs, and legal fees expended in connection with the investigation of potential target acquisitions, and extensive travel, operational, and related overhead costs expended in connection with consummating the proposed transactions.

122. As described above, Defendants sought to obtain money from DAI and KHAN FUNDS by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts, in violation of 18 U.S.C. § 1951 and New York Penal Law § 155.05(2)(e) in an effort to use Plaintiffs to launder the racketeering proceeds of the Enterprise and finance members of the Enterprise and others. Defendants sought to leverage Plaintiffs' contractual obligations in connection with the Partnership Agreement to solicit and recruit Plaintiffs to the Enterprise and to defraud Plaintiffs of RMB 300MM. As a result of the foregoing, Plaintiffs have suffered injury as a direct and proximate result of Defendants' false and misleading representations and omissions, including but not limited to certain remediation costs as described above.

## COUNT IV
## DEFAMATION

123. On July 9, 2021, defendant NATIONS published Announcement No. 2021-058, about and concerning Plaintiffs, with the headline, "Announcement Regarding Major Litigation" (the "Announcement").

124. The Announcement concerned the Singapore Action, and described the litigation as a demand that DAI "return embezzled funds" after NATIONS had suffered "loss of contact"

with DAI and an affiliated entity of KHAN FUNDS in November 2017. NATIONS repeated the false and defamatory claim that in November 2017 NATIONS was "unable to contact the relevant personnel of [Beijing Khan]" and that NATIONS initiated litigation to recover the allegedly embezzled funds "[a]fter the loss of contact" with DAI and others."

125. These statements are false and defamatory because they falsely state, suggest, and depict that: (i) DAI is a criminal who had embezzled money, (ii) DAI is an absconding thief, and (iii) DAI is a fugitive with whom justice had "lost contact" after embezzling money.

126. At no time was DAI a criminal who had embezzled money. At no time was DAI an absconding thief. At no time was DAI a fugitive from justice who had "lost contact" after embezzling money.

127. The foregoing defamatory and libelous statements have caused and continue to cause irreparable harm to DAI's personal and professional reputations, and have caused DAI to suffer severe embarrassment, humiliation, and emotional distress and mental anguish.

128. The foregoing defamatory and libelous statements have caused and continue to cause irreparable harm to KHAN FUNDS' business reputation, business operations, and financial condition.

129. The foregoing defamatory statements were untrue and defamatory in that they falsely reported and mischaracterized DAI's character and actions, and NATIONS knew that such statements were false.

130. NATIONS knowingly and intentionally published, or caused to be published, these false and defamatory statements with actual malice toward Plaintiffs and with knowledge of their falsity.

131. The foregoing statements constitute defamation and/or libel per se because they

51

FILED: NEW YORK COUNTY CLERK 03/02/2022 00:28 PM
INDEX NO. 152098/2022
NYSCEF DOC. NO. 12
RECEIVED NYSCEF: 03/12/2022

Case 1:24-cv-03142-UA Document 1-3 Filed 04/24/24 Page 84 of 90
212

falsely portray DAI as a criminal who intentionally, maliciously, and deliberately embezzled money and then "disappeared" with the money as an absconding thief and fugitive from justice.

132. The foregoing statements constitute defamation and/or libel per se because they falsely portray KHAN FUNDS as a sham and fraudulent company that is led by DAI, a criminal who intentionally, maliciously, and deliberately embezzled money and then "disappeared" with the money as an absconding thief and fugitive from justice.

133. These foregoing statements constitute defamation and/or libel per se because they falsely impugn Plaintiffs' honesty, integrity, trustworthiness, dependability, and professional fitness and abilities, and falsely charged DAI with engaging in criminal conduct, fraud, dishonesty, theft, and/or other conduct that would tend to injure Plaintiffs in their trade or business, and any trade, business, or profession which Plaintiffs may seek to pursue.

134. NATIONS' defamatory statements about Plaintiffs and NATIONS causing the worldwide syndicated publication thereof and endorsement by leading financial information/services companies throughout the world, has had, and will continue to have, a devastating and irreparable impact on Plaintiffs' personal, professional, business, and financial future.

## COUNT V
## PRIMA FACIE TORT

135. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

136. As described above, among other things, Defendants jointly and severally sought to intentionally inflict harm upon DAI through the use of tactics criminalizing DAI and forcibly repatriating him to the PRC. Defendants acted without excuse or justification in providing false information to the PRC police that DAI had committed various acts of criminal wrongdoing as a

52

means to cause the issuance, and thereafter the global broadcast, of an arrest warrant for DAI in the PRC, and causing the stalking of DAI in the State of New York by directing surveillance activities that caused, attempted to cause, and reasonably expected to cause substantial emotional distress and harm to DAI.

137.    As described above, DAI has suffered injuries as a direct and proximate result of Defendants' conduct, including, to wit, remediation costs in the form of legal fees to cause the revocation of the issues arrest warrant and legal fees to protect against the extradition of DAI and KHAN FUNDS' employees, fees for psychiatric treatment from the emotional distress caused to DAI, fees for security personnel to remediate Defendants' surveillance campaign, and the limitations caused by preventing DAI from worldwide travel to any of the countries which honored PRC extradition requests and elsewhere, and thus disabling DAI from running KHAN FUNDS' worldwide businesses and restricting his ability to serve as the primary executive and global figurehead of KHAN FUNDS.

## COUNT VI
## CIVIL CONSPIRACY

138.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though set forth fully herein.

139.    As described above,   Defendants, together with others, did knowingly, intentionally, and corruptly conspire to inflict harm upon DAI using the tactic of criminalizing DAI and forcibly repatriating him to the PRC.

140.    To this end, as described above and upon information and belief, Defendants had a meeting of the minds on the object or course of action of the conspiracy and formed one or more agreements for the purpose of carrying out the objective of the conspiracy to inflict harm upon DAI. Accordingly, each of the defendants had direct involvement in coordinating and organizing

53

the campaign to inflict harm upon DAI.

141.    As described above, at least one member of the conspiracy committed at least one over act to further the object or course of action of Defendants' conspiratorial agreement and each defendant knowingly agreed to conspire with each other to commit the acts described herein in furtherance of this common scheme.

142.    As described above, pursuant to, and in furtherance of, this common scheme, SUN committed overt acts, including arranging for providing false information to the PRC police bureau and encouraging and planning for the scheme to occur.

143.    As described above, the affirmative steps Defendants have taken in furtherance of the conspiracy have proximately damaged Plaintiffs and Plaintiffs suffered injury as a proximate result of these wrongful acts.

144.    As described above, all of the surveillance carried out against DAI in the State of New York was for the benefit of, with the knowledge and consent of, and under the control of, SUN and the other defendants.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against Defendants on all Counts, and seeks such relief as specified below for all Counts for which such relief is provided by law:

(i)    Awarding Plaintiffs damages in an amount to be determined, including but not limited to all damages and losses suffered by Plaintiffs, and Plaintiffs' subsequent response to and remediation related thereto;

(ii)    Awarding Plaintiffs compensatory and treble damages, as available, in an amount to be proven at trial;

(iii)    Awarding Plaintiffs the financial gain earned by Defendants as a consequence of

54

FILED: NEW YORK COUNTY CLERK 04/02/2022 00:28 PM
NYSCEF DOC. NO. 12

INDEX NO. 152098/2022
RECEIVED NYSCEF: 04/12/2022

Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 87 of 90

215

the violations described herein;

    (iv)    Awarding Plaintiffs statutory damages, as available;

    (v)    Awarding Plaintiffs punitive damages, as available;

    (vi)    Issuing an injunction preventing and restraining Defendants and their officers, agents, servants, employees, assigns, and those acting in active concert or participation with them, from any continued violation of 18 U.S.C. §§ 1962(c) and 1962(d).

    (vii)    Awarding Plaintiffs all costs and attorneys' fees to the full extent permitted under the applicable law;

    (viii)    Awarding Plaintiff pre- and post-judgment interest as permitted by law; and

    (ix)    Awarding any other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury in this action of all issues so triable.

Dated: Garden City, New York
       April 6, 2022

               **KENNETH S. FERARU, P.C.**

               By:    /s/ Kenneth S. Feraru
                     Kenneth Feraru, Esq.
                     1225 Franklin Ave., Ste. 325
                     Garden City, New York 11530
                     P: (516)535-3333
                     KFeraruesq@aol.com

55

FILED: NEW YORK COUNTY CLERK 03/02/2022 00:28 PM
NYSCEF DOC. NO. 12

INDEX NO. 152098/2022
RECEIVED NYSCEF: 03/12/2022

Case 1:24-cv-03142-UA   Document 1-3   Filed 04/24/24   Page 88 of 90
216

**LAW OFFICES OF WEI GU, ESQ., P.C.**

By:   /s/ Wei Gu
      Wei Gu, Esq.
      13514 Northern Blvd., Flr. 2
      Flushing, New York 11354
      P: (718) 600-6886
      WeiGulaw@gmail.com

*Attorneys for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| KHAN FUNDS MANAGEMENT AMERICA, INC. and XUEFENG DAI, | Index No.: |
| Plaintiffs, | |
| v. | **VERIFICATION** |
| NATIONS TECHNOLOGIES INC., NATIONS TECHNOLOGIES (USA) INC., YINGTONG SUN, ZHAOXUE LUO, BAOXIN HUANG, JUNJIE YU, and DOES 1-10 and ROES 1-10, | |
| Defendants. | |

STATE OF FLORIDA :
                              SS:
COUNTY OF [ Palm Beach ]:

XUEFENG DAI, being duly sworn, deposes and says that:

1.    I am a plaintiff in the above-captioned action, as well as the President and Chief Executive Officer of the plaintiff, KHAN FUNDS MANAGEMENT AMERICA, INC., in this action. As such, I have personal knowledge of the facts and matters set forth herein and am authorized to make the foregoing verification.

2.    I have read and reviewed the foregoing Complaint and am fully familiar with the facts and allegations contained therein. I hereby state, affirm and verify that each of the allegations contained in this Complaint is true and accurate to the best of my knowledge and information, except as for those allegations pled therein upon information and belief, and as to each of those allegations, I believe each of them to be true and accurate.

3.    My belief that the allegations pled in the Complaint "upon information and belief," are true and accurate is based upon my first-hand knowledge of certain facts averred therein and various communications with various individuals about or concerning the matters alleged therein.

_____
XUEFENG DAI

Sworn to before me on this 6th
day of April, 2022

_____
NOTARY PUBLIC

AXEL ROJAS
Notary Public - State of Florida
Commission # GG 335535
My Comm. Expires May 16, 2023
Bonded through National Notary Assn.

## CERTIFICATE OF CONFORMITY PURSUANT TO CPLR 2309(C)

STATE OF FLORIDA     )
                     ) s.s.
COUNTY OF [ Palm Beach  ])

    I, _Matthew J. Bstritzky, ESQ._____, an attorney at law duly admitted to practice in the State of Florida and residing in the State of Florida, do herby certify that the jurat or proof upon the annexed Verification of Xuefeng Dai, named in the foregoing instrument taken before Axel Rojas, a Notary in the State of Florida, was taken in the manner prescribed by the laws of the State of Florida, and, based upon my review, duly conforms to the laws thereof.

Sworn to before me on
this _6th_ day of _April_____, 2022

_____
Notary Public

AXEL ROJAS
Notary Public - State of Florida
Commission # GG 335535
My Comm. Expires May 18, 2023
Bonded through National Notary Assn.