UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUOTAIQIXING BIOMEDICAL
INTERNATIONAL (S) PTE. LTD.,

            Plaintiff,

– against –

XUEFENG DAI,

            Defendant.

**OPINION & ORDER**

24-cv-03142 (ER)

RAMOS, D.J.:

        In March 2024, Guotaiqixing Biomedical International (S) Pte. Ltd. ("GTQX") filed this action in New York state court against Xuefeng "Eric" Dai for recognition of a foreign judgment pursuant to New York's Uniform Foreign Country Money Judgment Act ("MJA"), N.Y. C.P.L.R. § 5301 *et seq*. A month later, in April 2024, Dai removed the action to federal court, where he has a pending action against numerous parties alleged to be in privity with GTQX for, *inter alia*, alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Before the Court is GTQX's motion to remand this action to the Supreme Court of State of New York, New York County, and for an award of attorneys' fees and costs. Doc. 5. For the reasons set forth below, the motion is DENIED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

        **A.**     **The Parties**

        GTQX is a company incorporated in Singapore and is a wholly owned subsidiary of Shenzhen Guotaiqixing Industry Investment Fund Management Centre LLP (the "Limited Partnership"). Doc. 1-4 at 355. Shenzhen Qianhai Nations Investment Management Co., Ltd. ("Nations Investment") is the limited partner in the Limited Partnership. *Id.*

Dai was born in the People's Republic of China ("PRC") and is currently a U.S. lawful permanent resident residing in Florida. Doc. 1-4 at 356. Dai lived in New York from 2015 until at least March 2020 and still conducts business in New York through his wholly owned corporation, Khan Funds Management America, Inc. ("Khan Funds"), which maintains its principal place of business in New York. *Id.* Khan Funds is a hedge fund focused on investments in biomedical and pharmaceutical companies. *See id.* at 300. Khan Funds became an "industry giant" and, at its height, ran fourteen hedge funds with assets totaling over one billion dollars. *Id.* Dai also wholly owns Beijing Khan Pharmaceutical Holdings Co., Ltd., the general partner in the Limited Partnership, and was formerly a director of GTQX with authority to make investment decisions. *Id.* at 355–57.

### B. The Singapore Action

In October 2020, GTQX filed a lawsuit in Singapore ("the Singapore Action") against Dai and two of Dai's employees alleging that they had unlawfully diverted millions of dollars from GTQX to entities that Dai controlled, including Khan Funds. *See* Doc. 1-4 at 358; *see generally* Doc. 1-1 at 60–106. Dai defended himself in that action from the United States. Doc. 1-5 ¶ 15; Doc. 11 at 9. In June 2023, the Singapore Court entered final judgment against Dai for $34,264,935.99 United States dollars and $290,153.97 Singapore dollars, plus pre- and post-judgment interest ("the Singapore Judgment"). Doc. 1-4 at 360–61, 370–71. The Singapore Judgment included an order freezing Dai's assets globally, including assets beneficially owned by Dai's affiliated entities. *Id.* at 198–209. Dai asserts that GTQX's filings in the Singapore Action were based on false allegations and relied on stolen and forged documents. *Id.* at 285.

### C. The RICO Action

Meanwhile, in April 2022, while the Singapore Action was pending, but before the Singapore Judgment was entered, Dai and Khan Funds filed an action in New York state court ("the RICO Action") against various defendants, including Nations Investment

and its parent company, Nations Technologies Inc. ("Nations Technologies"). *See Khan Funds Management America, Inc. et al. v. Nations Technologies Inc. et al.*, No. 22-cv-05055 (ER). Nations Technologies is a publicly traded Chinese company that is principally engaged in the design, manufacture, and distribution of integrated circuits. Doc. 1-5 ¶ 3. In the RICO Action, Dai and Khan Funds allege the defendants conspired to coerce them into stealing American technology for the PRC's military. Doc. 1-5 at 4. They further allege that the defendants retaliated against Dai when he reported their scheme to the Federal Bureau of Investigation, including by filing the Singapore Action. *Id.* ¶¶ 88–109. The pending RICO Action seeks, *inter alia*, an injunction forbidding the defendants from confirming or enforcing any judgment entered by the court in the Singapore Action—which was subsequently entered in June 2023—in the Unites States. *See* Doc. 1-5 at 11–12, 73. Although GTQX is not among the defendants in the RICO Action, it shares the same management with Nations Investment, Nations Technologies, and Nations Technologies (USA) Inc.—all of which are defendants in the RICO Action. Doc. 1 ¶ 13. In June 2022, the defendants removed the RICO Action to this Court on federal question grounds.[1] Doc. 1 at 1–2.

### D.     The Instant Recognition Action

In March 2024, two years after the RICO Action was filed, and nine months after the Singapore Judgment was entered, GTQX filed a Notice of Motion for Summary Judgment in Lieu of Complaint in New York state court, seeking recognition of the Singapore Judgment pursuant to the MJA ("the MJA Action"). Doc 1-1 at 2. The Notice did not mention the RICO Action. *See id.* The next month, in April 2024, Dai removed the MJA Action to this Court, arguing that the MJA Action is, in effect, a declaratory

---

[1] Dai and Khan Funds filed an amended complaint on December 13, 2022. Doc. 1-5.

3

judgment action, and that this Court has jurisdiction over the MJA Action because it is the "mirror image" of the RICO Action.[2]  Doc. 1.

On May 24, 2024, GTQX filed the instant motion to remand to the Supreme Court of New York.  Doc. 5.  It claims that exigent circumstances—namely that Dai sold property in Florida in alleged violation of the Singapore Judgment—warranted filing the motion without a request for a pre-motion conference.  *Id.* at 1.  On June 11, 2024, Dai responded to the motion to remand.  Doc. 11.  On June 18, 2024, GTQX filed its reply, arguing that this Court lacks federal question jurisdiction.  *Id.*

## II.    LEGAL STANDARD

The federal removal statute provides that "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction[ ] may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  The Second Circuit has established that "in light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."  *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs International, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).  The party seeking removal bears the burden of proving that the jurisdictional and procedural requirements of removal have been met.  *Mehlenbacher v. Akzo Novel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000).  However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

---

[2] Dai also asserts diversity jurisdiction for the purpose of preserving the argument on appeal, but he concedes that current Second Circuit precedent forecloses his position.  *See* Doc. 1 ¶ 9 (citing to *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (per curiam) (finding no diversity jurisdiction in a suit between a foreign corporation and a lawful permanent resident alien)).

4

"When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." *Weiss v. Hager*, No. 11-cv-2740 (VB), 2011 WL 6425542, at *2 (S.D.N.Y. Dec. 19, 2011) (citing *Federal Insurance Co. v. Tyco International Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006). Moreover, "[b]ecause this is a jurisdictional inquiry," the Court may "look beyond the face of the complaint" to affidavits and exhibits when deciding whether to remand. *Government Employees Insurance Co. v. Saco*, No. 15-cv-634 (NGG) (MDG), 2015 WL 4656512, at *3 (E.D.N.Y. Aug. 5, 2015).

### III. DISCUSSION

Dai opposes the motion to remand on the ground that this Court has subject matter jurisdiction—specifically federal question jurisdiction—over the MJA Action. *See* Doc. 11. Although the MJA Action arises under a state statute, Dai argues that federal question jurisdiction exists via the "mirror image rule," an exception to the well-pleaded complaint rule that concerns whether an action seeking declaratory relief raises a federal question. *See id.* at 13–19. GTQX instead argues that the MJA Action is not a declaratory judgment action, and that therefore the mirror image rule cannot apply to create federal question jurisdiction. *See* Doc. 7 at 8–15. The Court finds that the mirror image rule applies in this action to create subject matter jurisdiction pursuant to the RICO statute. The MJA Action seeks a determination that the Singapore Judgment is enforceable, while the RICO Action seeks a determination that it is not. Thus, the MJA and RICO Actions are mirror images of each other and should be consolidated.

#### A. The Mirror Image Rule

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, expands the type of relief available in federal court, but it does not by itself confer subject matter jurisdiction on the federal courts. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). In other words, actions brought pursuant to the DJA—although they arise pursuant to a federal statute—must state an independent cause of action that confers subject matter

5

jurisdiction. *See id.* For federal question jurisdiction to arise pursuant to 28 U.S.C. § 1331, the well-pleaded complaint rule requires that a complaint establish either that federal law creates a cause of action or that a plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California.*, 463 U.S. 1, 27–28 (1983). However, the mirror image rule allows federal courts to exercise jurisdiction over certain actions for declaratory relief that do not conform to the well-pleaded complaint rule; i.e., actions that do not facially implicate a federal question. The mirror image rule[3] provides that if the threatened action[4]—by the defendant in the declaratory action—presents a federal question, then a complaint seeking declaratory relief need not state a federal cause of action. *See id.* ("Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question."); *Major League Baseball Properties, Inc. v. Price*, 105 F. Supp. 2d 46, 54 (E.D.N.Y. 2000) ("[F]ederal question jurisdiction exists in a declaratory judgment action if the potential suit by the declaratory judgment defendant would arise under federal law.") (quoting *Cardtoons, L.C. v. Major League Baseball Players Association*, 95 F.3d 959, 964 (10th Cir. 1996)). Courts specifically evaluate

---

[3] The mirror image rule comes from *Skelly Oil*. 339 U.S. 667; *see Sunvestment Energy Group NY 64 LLC v. National Grid USA Services Co.*, 116 F.4th 106, 114 (2d Cir. 2024) ("To determine whether a court has subject-matter jurisdiction over a DJA claim, this Court follows *Skelly Oil*'s approach to 'conceptually realign the declaratory judgment parties and claims and analyze them as they would appear in a coercive suit.'" (citing *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 67 (2d Cir. 2012)). *New York by James v. Amazon.com, Inc.* provided an example of what would constitute a mirror image action by explaining that that the hypothetical mirror image action of an action where plaintiff sought a declaration that defendants violated New York labor laws would be an action in which the defendant sought a declaration that it did not violate New York labor laws. 550 F. Supp. 3d 122, 135 (S.D.N.Y. July 26, 2021).

[4] The "threatened" action can refer to either a filed or hypothetical coercive action. *See New York by James*, 550 F. Supp. 3d at 135; *Empire State Bus Corp. v. Loc. 854 Health & Welfare Fund*, No. 21-cv-10471 (LJL), 2023 WL 1966210, at *4 n.4 (S.D.N.Y. Feb. 13, 2023).

whether subject matter jurisdiction exists by rearranging the parties into "the hypothetical 'mirror image' coercive suit," and then evaluating whether such a suit invokes federal law. *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 69–71 (2d Cir. 2012) (explaining that the court had federal question jurisdiction over the declaratory judgment action, which commenced as an arbitration in New York, because the court would have federal jurisdiction, specifically admiralty, over the hypothetical mirror image coercive action; i.e., a federal action brought by the defendant in the New York arbitration to enforce payment); *Empire State Bus Corp. v. Local 854 Health & Welfare Fund*, No. 21-cv-10471 (LJL), 2023 WL 1966210, at *2, *4 n.4 (S.D.N.Y. Feb. 13, 2023) (explaining that the court had federal question jurisdiction over the state court action for declaratory relief because the defendant in the state action threatened to file an action, which would have arisen under the Employee Retirement Income Security Act of 1974 ("ERISA") and would have been the mirror image of the state action.)

Crucially, the mirror image rule does not expand the jurisdiction of the federal courts. *See Skelly Oil Co.*, 339 U.S. at 671. The narrow rule ensures that the federal question jurisdiction of a case turns on the substance of the dispute. *See Empire State Bus Corp.*, 2023 WL 1966210, at *10. Thus, it prevents a would-be federal plaintiff from having his claim preempted by a counterparty who files an action for declaratory relief in state court. *See id.*

### B. The Mirror Image Rule Is Applicable to This Case

Dai argues that the mirror image rule should apply to actions for recognition of foreign judgments such as the MJA Action because they are "effectively" requests for declaratory relief. Doc. 11 at 5. He further argues that the RICO Action is the mirror image action of the MJA Action. *Id.* at 5, 16–17. Therefore, because the RICO Action is properly before this Court, the Court should also have jurisdiction over the MJA Action. *See id.* at 16–19. GTQX counters that the mirror image rule is only designed to preserve federal question jurisdiction for declaratory judgment actions—which the MJA Action is

not. Doc. 7 at 10. GTQX further argues that the RICO Action cannot be the mirror image of the MJA Action because the RICO Action involves no MJA claim and GTQX is not a defendant in the RICO Action.[5] *Id.* at 11–13. Accordingly, there is no federal jurisdictional hook for the MJA Action. *Id.* at 11–14. The Court finds that on the facts of this case, the MJA Action is functionally a request for declaratory judgment, and that the mirror image rule therefore applies to create federal jurisdiction.

According to Dai, actions for recognition of foreign judgments are actions for declaratory judgments because they seek non-coercive relief—in the form of a declaration that a foreign judgment can be enforced. Doc. 11 at 15; *see also Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 987 n.2 (9th Cir. 2013) ("Recognition of a judgment is [just] a prerequisite to its enforcement…[and] [i]n recognizing a judgment, a court acknowledges that a matter has been conclusively adjudicated and that the judgment may have a preclusive effect."). For the mirror image rule to apply to the MJA Action, its "mirror image" must seek coercive relief. *See Garanti Finansal Kiralama A.S.*, 697 F.3d at 66. To this end, Dai argues that the mirror image of the MJA Action is the RICO Action pending in this Court, which seeks, *inter alia*, an injunction prohibiting recognition of the Singapore Judgment. *See* Doc. 11 at 6. According to Dai, this is the type of coercive relief the mirror image rule purports to protect from jurisdictional preclusion. *See id.* at 15–16. Dai points to language from a Florida case that uses the terms "declaratory judgment" and "[recognition of a] foreign judgment" interchangeably to argue that a declaratory judgment action and an action to recognize a foreign judgment seek non-coercive relief. *See Celera Telecom Ltd. v. LDI Networks, Inc.*, No. 21-cv-20324, 2021 WL 5989342, at *1 (S.D. Fla. Sept. 14, 2021), *report and recommendation*

---

[5] GTQX does not deny that it is in privity with several of the defendants in the RICO Action. *See* Doc. 11 at 18. To the extent that GTQX addresses privity, it is by arguing that the RICO Action cannot be the mirror image of the MJA Action because GTQX is not a defendant in the RICO Action. *See* Doc. 7. at 12. In addition, GTQX presents no authority to foreclose the possibility that the mirror image applies when the parties are not identical.

8

*adopted*, No. 21-cv-20324, 2021 WL 5989157 (S.D. Fla. Dec. 17, 2021) ("[Plaintiff's] [c]omplaint asserts a single cause of action against [the defendant] – a declaratory judgment recognizing and domesticating the out-of-country foreign judgment[.]").

GTQX counters that the MJA Action is not strictly a declaratory judgment action because it also seeks coercive relief. *See* Doc. 14 at 2–3, 7. GTQX argues that although a declaration that the Singapore Judgment is enforceable is a prerequisite to enforcement of the Singapore Judgment, it also seeks monetary relief in the issuance of a domestic judgment in the amount of a foreign judgment.[6] *See id.*; *Canadian Imperial Bank of Commerce v. Saxony Carpet Co.*, 899 F. Supp. 1248, 1251 (S.D.N.Y. Oct. 13, 1995) (C.P.L.R. Article 53, "also known as the Uniform Foreign Money-Judgments Act, governs the recognition *and* enforcement of foreign country money judgments in New York courts.") (emphasis added). According to GTQX, despite the *Celera* court's conflation of the terms "declaratory judgment" and "foreign judgment," its recognition of a United Kingdom judgment resulted in the recognition and enforcement of the foreign judgment and awarded interest on the foreign judgment, thus conferring declaratory and monetary relief. *See Celera Telecom Ltd.*, 2021 WL 5989342, at *2. Like the plaintiff in *Celera*, GTQX seeks recognition *and* enforcement of the Singapore Judgment, as well as an award of post-judgment interest calculated under state law. *See id.*; Doc. 1-4 at 370–71.

While it is true that the MJA Action seeks more than just declaratory relief, that does not preclude application of the mirror image rule. Courts in this District have applied the mirror image rule in cases where a plaintiff has sought remedies in addition to declaratory relief. *See, e.g.*, *W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 193–195 (2d Cir. 1987) (applying the mirror image rule to find federal

---

[6] The MJA statute states that if a court finds that a foreign judgment is entitled to recognition, it is "conclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in this state would be conclusive" and "enforceable in the same manner and to the same extent as a judgment rendered in this state." N.Y. C.P.L.R. § 5307(a)(1)–(2).

9

question jurisdiction where plaintiffs sought declaratory relief, injunctive relief, and damages); *see also Major League Baseball*, 105 F. Supp. 2d at 54 (applying the mirror image rule to find federal question jurisdiction where plaintiffs sought declaratory and injunctive relief).

Here, the MJA Action seeks an immediate monetary reward as well as, implicitly, a resolution of one of the questions pending in this Court, namely, the validity and enforceability of the Singapore Judgment. An outcome favorable to GTQX in the MJA Action would arguably preempt the declaration sought in Dai's pending RICO Action, resulting in the kind of jurisdictional preclusion the mirror image rule was designed to prevent. *See Empire State Bus Corp.*, 2023 WL 1966210, at *10. Even though the MJA Action does not arise under the DJA—and also seeks monetary relief—it effectively operates like an action for declaratory relief vis-a-vis the RICO Action through the mirror image rule.

### C. The Injunction Sought in the RICO Action Operates as a Mirror Image of the MJA Action

Dai argues that the RICO Action pending in this Court is the mirror image of the MJA Action because it seeks an injunction against future recognition of the Singapore Judgment—the opposite of what the MJA Action seeks. GTQX counters that even if the mirror image rule could apply, the hypothetical mirror image action would simply seek a declaration of nonrecognition under the MJA statute and that action would arise under state law. GTQX cites *New York by James v. Amazon.com, Inc.*,[7] in which the federal court determined that the hypothetical mirror image action of an action where plaintiff sought a declaration that defendants violated New York labor laws would be an action in

---

[7] In *New York by James*, Amazon, the state court defendant, had previously filed a declaratory judgment action in federal court seeking to enjoin state regulation of COVID-19 workplace safety protocols. *See* 550 F. Supp. 3d 122, 135 (S.D.N.Y. July 26, 2021). Amazon argued that the state action filed by New York by James sought to preempt Amazon's federal action, and that this preemption issue conferred federal question jurisdiction via the mirror image rule. *See id.* The court declined to invoke the preemption defense as a basis for federal question jurisdiction. *See id.*

which the defendant sought a declaration that it did not violate New York labor laws. *See* 550 F. Supp. 3d 122, 135 (S.D.N.Y. July 26, 2021). It may be that the "ideal" hypothetical mirror image of the MJA Action would be an action explicitly seeking a declaration of nonrecognition pursuant to the MJA. However, unlike in *New York by James*, Dai is not asking the court to concoct a "hall of mirrors" to create federal question jurisdiction where it otherwise would not exist. *See id.* Dai is asking the Court to recognize the MJA Action as the flip side of the RICO Action, where federal jurisdiction has indisputably existed for nearly two years prior to the filing of the MJA Action. *See id.* That the Court sees the MJA and RICO Actions as mirror images on the particular facts present here does not imply that any defendant in any case can create federal jurisdiction by filing a federal action seeking an injunction against bringing a claim against them. Such a broad interpretation of the mirror image rule ignores the unique circumstances present here; namely that Dai filed the RICO Action more than a year before the Singapore Judgment was even entered—suggesting that he did not file the RICO Action to create federal jurisdiction for a future enforcement action that may come to pass. *See* Doc. 11 at 19. In *New York by James*, by contrast, the parties filed their actions five days apart. *See* 550 F. Supp. 3d at 129. It bears noting that Dai also originally filed the RICO Action in state court, and that the defendants—who are alleged to be in privity with GTQX—removed it to federal court. *Id.*

### D. The Mirror Image Rule Creates Jurisdiction for the MJA Action

Proceeding from the conclusion that the MJA is essentially declaratory judgment action—and that the RICO Action is the mirror image of the MJA—the final question is whether the RICO Action confers federal question jurisdiction over the MJA Action. Courts determine whether federal jurisdiction exists in cases seeking declaratory judgment by applying the well-pleaded complaint rule not to the declaratory judgment complaint—here, the MJA Action—but to the complaint that the defendant in declaratory action did bring or would have brought—here, the RICO Action. *See ABB Inc. v. Cooper*

11

*Indus., LLC*, 635 F.3d 1345, 1349–50 (Fed. Cir. 2011); *see also Don King Prods., Inc. v. Hopkins*, No. 04-cv-9705 (PKL), 2005 WL 1053336, at *5 (S.D.N.Y. May 4, 2005) ("The nature of the potential coercive action that the defendant might bring against the declaratory judgment plaintiff must be analyzed. The court will ask whether in this hypothetical suit, a federal question would be presented.").

Dai argues that jurisdiction exists because the RICO Action is properly before this Court. *See* Doc. 1 at 3; Doc. 11 at 13–14. GTQX instead argues that the RICO Action raises only a defense to the MJA Action, specifically that the requested injunction in the RICO Action merely anticipates an action for recognition of the Singapore Judgment. *See* Doc. 7 at 12. Per the well-pleaded complaint rule, a defense that invokes a federal question does not warrant removal of a state law claim. *See Empire State Bus Corp.*, 2023 WL 1966210, at *10 ("[I]t is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction.") (quoting *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952)). However, even if the MJA Action had not been brought, the federal claim in the RICO Action would still exist. Accordingly, the injunction requested in the RICO Action is not just a defense to the anticipated state action. In addition, the "declaratory" action here does not arise only as a defense to a state-created action. *See Franchise Tax Board*, 463 U.S. at 16 (1983) ("If, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.").

Dai cites to two cases in which courts held that earlier-filed RICO claims created federal question jurisdiction for subsequent, related declaratory judgment actions. In other words, cases in which the courts did not find the actions for declaratory judgments were merely defenses to the RICO claims. In *Lavastone Capital LLC v. Coventry First LLC*, the plaintiff's RICO claims against the defendant created federal question jurisdiction over the defendant's separate action for declaratory judgment, thus denying the motion to remand to state court. *See* Nos. 14–cv–7139, 14–cv–7967 (JSR), 2015 WL

12

1939711, at *13 n.13 (S.D.N.Y. Apr. 22, 2015). The court reasoned that the declaratory action was "inherently related" to the federal RICO claims, thus warranting federal question jurisdiction over the defendant's action. *See id.* Similarly, in *Major League Baseball*, a previously filed RICO action in federal court created federal question jurisdiction for an action seeking a declaration that that the RICO claimants lacked standing to sue for violations of RICO. *See* 105 F. Supp. 2d at 48, 53–54. Like *Lavastone* and *Major League Baseball*, this case presents a declaratory action that is inherently related to a well-pleaded RICO action. The RICO Action creates federal question jurisdiction for the MJA Action by alleging, among other things, that the RICO enterprise retaliated against Dai by initiating the Singapore Action, that the Singapore Action was intended to harass and financially ruin Dai, and that if the Singapore Action entered a judgment—which it subsequently did—it would be fraudulently obtained. Doc. 1-5 ¶¶ 1, 15, 97, 106, 109.

The Court finds that the RICO Action—as the mirror image of the MJA Action—creates federal question jurisdiction for the MJA Action. The MJA Action should remain in federal court, where the Court can resolve it alongside the RICO Action.

### E. The MJA and RICO Actions Will Be Consolidated

Under Rule 42 of the Federal Rules of Civil Procedure, a district court may consolidate one civil action with another civil action pending in the same court if both actions "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). When actions are consolidated, they are "join[ed] together ... without ... los[ing] their independent character." *Hall v. Hall*, 584 U.S. 59, 66 (2018). "The proper solution to the problems created by the existence of two or more cases involving the same parties and issues, simultaneously pending in the same court [is] to consolidate them under Rule 42(a)." *Devlin v. Transportation Communications International Union*, 175 F.3d 121, 130 (2d Cir. 1999) (citation omitted).

"A district court can consolidate related cases under [Rule 42(a)] sua sponte." *Id.* And "[i]n assessing whether consolidation is appropriate ..., a district court should consider both equity and judicial economy." *Id.* But "efficiency cannot be permitted to prevail at the expense of justice—consolidation should be considered when 'savings of expense and gains of efficiency can be accomplished without sacrifice of justice.'" *Id.* (citation omitted) (emphasis omitted).

Because the MJA and RICO Actions involve common issues of law and fact and many of the same parties, both equity and judicial economy support their consolidation.

## IV. CONCLUSION

The motion to remand the action to state court and for attorneys' fees is DENIED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 5, and consolidate the cases, *Guotaiqixing Biomedical International (S) PTE Ltd. v. Dai*, 24-cv-03142 (ER), and *Khan Funds Management America, Inc. et al. v. Nations Technologies Inc. et al.*, No. 22-cv-05055 (ER), for further proceedings. The parties are directed to appear for a telephonic initial pretrial conference at 10:30 a.m. on December 4, 2024. The parties are directed to dial (877) 411-9748 and enter access code 3029857# when prompted.

It is SO ORDERED.

Dated:   November 18, 2024
         New York, New York

                                              _____
                                              EDGARDO RAMOS, U.S.D.J.